JOHN A. COLEMAN *vs.* NEW YORK & NEW HAVEN RAILROAD COMPANY.

Before beginning his argument on a trial, the defendant presented written prayers for instructions to the jury. During the argument, the judge said that he should rule as requested, but with a qualification of one instruction, and the defendant replied that he took no exception to the qualification. When the judge charged the jury, he stated the qualification in writing; and the defendant then said that he took exception. The judge thereupon remarked, that if the defendant would point out wherein the written statement of the qualification differed from the oral statement of it assented to, the court might revise the phraseology; but the defendant declined to suggest any change. *Held,* that

Coleman *v.* New York & New Haven Railroad Company.

the refusal of the defendant to point out the alleged variance was a waiver of any right of exception.

On the trial of an action against a railroad corporation for an assault and battery of the plaintiff in expelling him from a car where he was wrongfully, the defendants contended that the force they used was necessary to overcome force used by him to resist expulsion, and he contended that the force he used was justifiable against blows which they struck him. The defendants requested a ruling that in resisting the blows the plaintiff would have no right to resist being expelled from the car. The judge instructed the jury that this was so, if they could make the distinction upon the evidence; but left them to infer that the burden was on the defendants to establish it. *Held,* that the omission to guard the instruction against such an inference gave the defendants good ground of exception.

In an action against a railroad corporation for blows struck upon the plaintiff by its servants in removing him from a car from which they had a right to expel him, it is a question of fact for the jury whether the blows were struck in the exercise of justifiable force to effect the expulsion and overcome force with which he was resisting it.

If assistants employed by the conductor of a railroad train to expel a person from the car strike him unjustifiably in expelling him, the railroad corporation is liable, although the blows were struck against the conductor's order.

It is no defence to an action against a railroad corporation for excessive violence of its servants in expelling the plaintiff from a car, which aggravated a disease known to him but not to them, to which he was subject, that he gave them no caution in relation to it.

On the trial of an action against a railroad corporation for excessive violence used to expel the plaintiff from a car, if there is evidence tending to show that it consisted both in blows struck within the car, and in throwing him from the platform, the defendants have no ground of exception to the refusal of a ruling which assumes that the evidence of it related only to the blows.

On the trial of an action for an assault and battery, the question whether blows, which the defendant struck on the plaintiff's head, aggravated a hernia to which the plaintiff was subject, is for the jury.

On the trial of an action against a railroad corporation for an assault and battery of the plaintiff in expelling him from a car, the judge, after adopting a ruling requested by the defendants that the plaintiff was wrongfully in the car, instructed the jury, as to the degree of force used in the expulsion, that if he was wrongfully there the defendants had a right to use reasonable force to remove him. *Held,* that the hypothetical form of the instruction gave the defendants no ground of exception.

On the trial of an action against a railroad corporation for an assault and battery of the plaintiff in expelling him from a car, the defendants contended that he was in the car wrongfully and that such force as they used was necessary to overcome force used by him to resist expulsion, and he sought to recover on the ground that they used excessive force. Before the charge to the jury, the defendants presented prayers for rulings as to the rightful or wrongful character of his occupation of the car, and the degree of force they had a right to use to expel him if it was wrongful. In charging the jury, the judge first granted these prayers, with some modifications; then made a general statement of the law applicable to the case; and then stated the claims of the parties, and remarked that they presented an issue of fact peculiarly within the province of the jury, and that he should submit it to them under the general statement of law which he had already made, and special rulings asked for by the parties; and finally called their attention to such rulings. *Held,* that the defendants had no ground of exception to the charge as submitting matters of law to the determination of the jury.

TORT for assault and battery of the plaintiff while ejecting him from a car on the defendants' railroad at Stamford in the state of Connecticut. Trial, and verdict for the plaintiff, with damages in the sum of $3450, in the superior court, before *Pitman*, J., who allowed the following bill of exceptions:

" There was evidence at the trial tending to show that the facts were as follows : The plaintiff at New York City offered at the gate in the defendants' station-house a coupon-ticket, reading from New Haven to New York, and claimed to be allowed to ride on the cars from New York to New Haven on that ticket. He was refused admission to the cars, whereupon he purchased another ticket from New York to New Haven, and was admitted to the cars. When the conductor came through the cars to collect the tickets, the plaintiff offered him the coupon-ticket reading from New Haven to New York, and the conductor refused to accept it, and, after two or three conversations, requested him to leave the train at Stamford unless he would pay his fare. When the train reached Stamford, the plaintiff refusing to leave the train or to pay his fare, the conductor summoned four men, as he testified, to go with him on the train and remove the plaintiff. The station-agent at Stamford, (who was a son of James H. Hoyt, the superintendent of the road,) who happened to be at the same station, although not summoned, went on the cars ; and the conductor on cross-examination testified that he saw young Hoyt take hold of the plaintiff while he was being removed, and that he did not forbid him. The conductor ordered the men to put the plaintiff out, but to do it carefully, as some of the witnesses testified ; and he and some other witnesses testified that, at least twice during the progress of the affair, he told the men not to strike him. The men thereupon took hold of the plaintiff, and took him out of his seat into the aisle. The plaintiff had his arm at the time under the arm of the seat, which was attached to the cushion, and as he was lifted out the cushioned seat came with him. The evidence was contradictory, as to the position of the plaintiff and the degree of resistance he opposed to being removed from the seat. The plaintiff testified that after he got into the aisle he was struck two or three heavy blows behind the ear.

Other witnesses testified that the plaintiff was struck behind the ear by one of the men who were putting him out, though they were not able to state the exact time. The defendants' witnesses testified that the plaintiff resisted violently, and that while being removed from the car he struck one in the face and another in the body, and also that he bit one violently in the arm and knocked another between the ears. The defendants' witnesses all testified that they did not strike him, or see any one strike him ; nor was it proved who did strike him. The plaintiff's witnesses, who testified to the striking, testified that the blows were given by some railroad employee whom they could not identify. It appeared that the conductor was present during the whole affair. The plaintiff admitted striking the men who put him out, but denied the biting, and contended that he did not strike until he was struck, and that he then used all the means he could to extricate himself, fearing for his life. The plaintiff contended, among other grounds of damage, to recover additional damages, because the next day he found that a tendency to hernia, which he had before had from his birth, was considerably aggravated ; and he testified that, when the men got him to the platform of the car, they threw him upon the platform of the depot. The defendants contended that, while they were taking the plaintiff to the platform of the depot, they all fell and went down together. The plaintiff did not contend that the blows upon the head produced the aggravation of the hernia, but that the struggle and the being thrown upon the platform produced it ; and he contended that after he was struck he had the right, as in self-defence, to strike and struggle to any extent, and that for any injury produced by so struggling and striking, on his part, the defendants were liable. This is not intended as a full report of evidence, but to illustrate the exceptions.

" Before the charge to the jury, and before the defendants' argument, the defendants asked for instructions to be given to the jury as follows :

" 1. That, under the facts claimed by the plaintiff, he was a trespasser in the defendants' cars.

" 2. That the defendants had a right to eject him from their

cars, and, in so doing, were justified in using not only sufficient force to expel him, but also force sufficient to overcome his resistance to their efforts to expel him.

"3. That the conductor had the right to call to his assistance such employees as were necessary to remove the plaintiff. For the acts of the conductor, and of the employees who under his direction aided in ejecting the plaintiff, the defendants are liable; for the acts of other persons, whether employees or not, the defendants are not responsible.

"4. That if the jury find that the defendants used excessive or unreasonable force, and that the plaintiff resisted the application of this force, they must, in estimating damages, separate the injury occasioned by his resistance to the expulsion, from the injury occasioned in other ways, and allow compensation for the latter class of injury exclusively.

"5. That the measure of damage must be limited to such sum as will make the plaintiff good for actual injuries, other than those occasioned by or resulting from his resistance; and that the plaintiff, being a wrongdoer, is not entitled to any compensation as vindictive damages.

"6. That the defendants, if liable at all, are only liable for any excess of force beyond that which, taking everything into consideration, the urgency of the occasion, the resistance, and the object to be accomplished, was reasonable or necessary to remove the plaintiff from the cars.

"7. That, to justify the plaintiff in using resistance under the plea of self-defence, he must show that his resistance was calculated to overcome a force against which he had a right to defend himself; and he is not justified, in resisting a lawful expulsion, to defend himself against [by?] an unlawful assault.

"8. That, to entitle the plaintiff to recover in this case, he must take the burden of proof, and show that his injuries, for which he is to be compensated, were occasioned solely by the wrongful act of the defendants.

"The judge took these prayers into consideration, and during the defendants' argument interrupted their counsel to say that it might be of advantage to them in their argument to know that

the court would rule as requested, except that the third instruction should be qualified, so that the direction of the conductor need not be express, but might be implied from his presence and assent to the aid of others; to which qualification the counsel then said that they took no exception. When the judge came to give the instruction, the qualification was reduced to writing and given in these words : ' But it is not necessary that the conductor should have given express direction to all concerned in the ejection of the plaintiff, but if the jury are satisfied, upon all the facts and circumstances, that such persons aided the conductor and his other employees, with his permission and sanction, then the jury may infer an employment of such persons ; that is to say, if a party saw other persons aiding and assisting those whom he calls upon, and who are in his employment, he having full knowledge of their doing it, and giving directions to them in common with others, and does not interfere to prevent their action, and from all the circumstances, taking the fact of who they are, and the relation they occupy to him and to his employees, you are satisfied that he sanctions such acts, you may infer an employment. It is not necessary that they should be called in directly to the assistance of the other parties. If, on the other hand, the other parties were mere interlopers, and the conductor had no opportunity to interfere with their action, it would not be fair that the railroad corporation should be held responsible, whatever their instructions are as to putting out passengers.' After the charge, the defendants excepted to this qualification. Thereupon the judge said to their counsel, that he understood that it had once been assented to in substance, and that, if counsel would point out wherein it differed from the qualification assented to, the court might revise the phraseology. But the counsel declined to suggest any change, and claimed their right of exception.

" The seventh instruction was read by the judge with the following remarks : ' If I understand that proposition, it means this : that, in exercising the right of self-defence against the blows which were struck upon him, the plaintiff had not a right to go further than to prevent those blows ; that is to say, in exercising a right of resistance to those blows, he had no right to resist the

process of being put out. That is so; if you can make that distinction, the party is entitled to the benefit of it. The plaintiff would not be entitled to resist being put out, although he would be entitled to resist aggressions made upon him by blows upon his head and the other injuries to which he testifies.' The other instructions were given without qualifications.

" The defendants also asked for the following further instructions, after the charge: ' That if Coleman, being a wrongdoer, and refusing to leave the car, is notified that he is to be put out, and he has a disease that might be aggravated by such expulsion, and he gives no notice thereof to them, the defendants are not liable for any aggravation of the disease.' This instruction was given by the judge with the following addition : ' unless they exceeded the limits of reasonable force ; that is to say, to put it in a more succinct and intelligible form to you, the simple question before you is, whether the defendants exceeded reasonable force, and of that you are the sole judges ; if they did, then they are answerable for the consequences of that act. If they removed him properly from his seat, and then, after he was in the aisle, any persons who were, under the instructions given you, their agent or employees, and aided and assisted them in putting him out, used force, by blows on the head or otherwise, that was beyond the limits of reasonable force, (of course you will be of opinion that blows upon the head in the manner testified by the plaintiff were not reasonable,) then, for all the natural consequences of that injury the defendants would be responsible. So if, when they arrived at the platform of the car, they threw him bodily upon the platform of the depot, as he says, they would be responsible for that.'

" The defendants also requested the judge to instruct the jury ' that if there were blows inflicted upon the plaintiff by any of those who were engaged in putting him out, the conductor in charge being present and telling them not to strike, then they exceeded their authority and the defendants are not liable.' This request the judge refused ; but no exception was taken to this refusal, nor was any objection made or exception taken to any of the qualifications or explanations added by the presiding judge

to the written instructions given, except as above recited to the qualification to the third. The defendants, however, now claim that, where written prayers for specific instructions were made, any alteration or qualification thereof entitled them to exception. From which rulings and refusals to rule the defendants except."

*C. G. Child* (of Connecticut) *& L. M. Child*, for the defendants.

*E. D. Sohier*, (*O. Stevens* with him,) for the plaintiff.

CHAPMAN, C. J. The plaintiff has no claim against the defendants as carriers, and they owed him no duty as such ; for he was wrongfully in their car, and wrongfully refused to leave it when requested to do so, and when the conductor and his assistants undertook to remove him, as they had a right to do, he wrongfully resisted them. When they took hold of him, he had his arm under the arm of the seat, which was attached to the cushion ; and as he was lifted out, the cushioned seat came with him. He admitted that he struck the men who put him out, and claimed a right to strike and struggle to any extent, in self-defence, against the violence which he alleged was committed upon him by blows and otherwise. According to the testimony of the defendants' witnesses, the violence he used towards them was very great. Violence on his part would increase the violence necessary and proper to be used on their part ; and if it contributed in any degree to the violence of his fall, or to the aggravation of his disease, he cannot recover for the injuries he received. The burden was on him to prove that his own illegal acts did not in any degree contribute to the alleged injury, but that it was wholly caused by the wrongful acts of the defendants' servants. This would be so, even if his mere negligence contributed to the injury. *Murphy* v. *Deane*, 101 Mass. 455. It is not less so, if his acts of forcible resistance contributed to it.

The defendants allege several exceptions. We do not think they have a right to except to the written qualification made to the third instruction. It was designed by the judge to express in writing what he had stated orally without exception ; and when it was objected to, and he asked the objecting counsel to state in

what respects it differed from his oral statement, he was entitled to a candid answer. The alleged variance should have been pointed out, and a failure to do so ought to have been regarded as a waiver of the exception; for there was then an opportunity, either to have the qualifying clause made correct, or to have an exception to it allowed understandingly.

But the ruling made in reply to the seventh request for instructions cannot be sustained. The request probably contains an unintentional error, and it was proper for the judge to endeavor to explain its meaning. He undertook to do so. He stated the defendants' proposition to be, " that, in exercising the right of self-defence against the blows which were struck upon him, the plaintiff had not a right to go further than to prevent those blows; that is to say, in exercising a right of resistance to those blows, he had no right to resist the process of being put out." He then added : " That is so; if you can make that distinction, the party is entitled to the benefit of it. The plaintiff would not be entitled to resist being put out, although he would be entitled to resist aggressions made upon him by blows upon his head and the other injuries to which he testifies." But the jury should have been told that the burden was on the plaintiff to establish the distinction, and he must prove any facts that he relied upon as a justification for going further than to prevent blows. But the ruling left the burden on the defendants.

He further instructed them that "if the defendants removed him properly from his seat, and then, after he was in the aisle, any persons, who were, under the instructions given to the jury, the defendants' agent or employees, and aided and assisting them in putting him out, used force, by blows on the head or otherwise, that was beyond the limits of reasonable force, (of course, you will be of opinion that blows upon the head in the manner testified by the plaintiff were not reasonable,) then, for all the natural consequences of that injury the defendants would be responsible. So if, when they arrived at the platform of the car, they threw him bodily upon the platform of the depot, as he says, they would be responsible for that."

It is not correct, as a legal proposition, to say that blows on the head or otherwise would of course be illegal. It might depend upon what the plaintiff was doing. If, for example, he was biting the arm of the man who struck him, the jury might find that it was a justifiable method of disengaging his teeth. It was a question of fact, and should have been left to the jury under proper instructions, and not passed upon as matter of law. And the liability of the defendants for the consequences of all the acts of their servants should have been stated with the qualifications, stated above, in respect to the plaintiff's own agency in contributing to the injury.

The instruction asked in respect to the liability of the defendants, if the conductor told the men not to strike, was properly refused. What these men did in the performance of the service for which the conductor employed them, the defendants are liable for. *Exceptions sustained.*

At the second trial in the superior court, before *Scudder,* J., the jury again found for the plaintiff, with damages in the sum of $3500, and the judge allowed the following bill of exceptions "if by the statement of facts therein contained the defendants are entitled to them."

The bill first set forth the circumstances, down to the expulsion of the plaintiff from the car, more fully, and not materially otherwise than the former bill; and that there was a difference in price between such coupon-tickets as the one which the plaintiff held, and other tickets between the same points ; and that there was a regulation of the defendants that such coupon-tickets should not be received except in the direction for which they were issued. The bill then continued as follows :

" In regard to the expulsion, the plaintiff testified : ' When the train stopped, I put my knees on the back of the seat in front of me, and took out a book and began to read. I heard some one say they were coming for me ; looked around, and saw the conductor coming at the head of from three to five men. The conductor said, " This is the man ; pull him out and put him on the platform . " I said, " If you do it, it is at your peril." He said,

Coleman *v.* New York & New Haven Railroad Company.

" Pull him out and put him on the platform." They seized my coat by the lappel, and tried to roll me out of the seat; but the coat tore, and I did not roll out, and they were quiet for an instant. Then they jumped at me, and two of them put their arms around my legs, as I had them on the back of the seat, and as many as could got in back of the seat and grasped me by the shoulders and commenced wrenching me out in the most violent manner. I instinctively grasped the arm of the seat. They jerked me out, and the arm of the seat and the cushion came up with me and slid off my arm. After they got me into the aisle, they dropped my feet an instant, and somebody struck me three tremendous blows of the fist just back of the right ear. Not until then did I make the slightest resistance except clinging to the seat. When the blows struck me, I supposed the men would maim me or disfigure me for life, if they did not kill me, and I then struck out to beat them off, struggling to release myself as long as I had the power and until they overpowered me. I struck one man in the chin as hard as I could, and another in the face, and I do not know how many more. I struck another man away from me as we went out of the car-door, and he fell over between the cars. When they got out of the car, they all grabbed me and threw me broadside, like a dead sheep, from the platform of the car to the platform of the station. I struck on my side in the mud, tore the flesh off my limbs somewhat, and ruptured me. The superintendent of the road was at the station, and I told him I would give him a dose of law and see if I could not teach him something. He said he would give me all the law I wanted, if I wanted to test the case. My hat and satchel were passed out of the car to me. Then, after the train had started, I ran and jumped at the rear of the car. The superintendent shouted not to let me get on, and his son and another man pulled me off, and held me till the train was gone. Then I pulled my regular ticket out of my pocket, and asked why I was held. The superintendent said that I would have shown that ticket before if I had been a gentleman; and I said he was no judge, and told him to stop talking to me. He said that I had tried to steal my ride to New Haven and sell my ticket, and they would give me all the law I

wanted and show me that the laws of Connecticut were different from where I came from. In the depot, and for a week or two after, I was stiff from head to foot. I could not shut my left hand, and it was badly swollen. There was a black and blue spot on my arm, and the skin was torn off, and the flesh was rough. The skin was knocked off both knees, and there was a black and blue place on my right leg. Then there was this rupture. The protrusion was large, and there were streaks down the leg, and it was inflamed, and up into the groin, and there was a dull, bearing-down pain. The protrusion was perhaps as large as a turkey's egg, on one side; and on the left side, where I had never had any indication of hernia, it was very tender and sore, so that pressure was very painful. When I was a child, it was discovered that I had a tendency to hernia; but my parents were very careful, and consulted physicians to see if anything could be done to prevent trouble, but there was no special difficulty. I had worn a truss when I was quite a small boy, perhaps a year or two. I do not remember when I resumed it, but think it was before going to California. I was going to a distant country, and provided every means, that in case of accident I might be able to take care of myself. It never hindered me from active exercise, running, climbing or swimming. In California I could walk thirty miles, ride horseback, climb the mountains; and go down a hundred feet shaft by a rope hand over hand, without any trouble. I was never laid up a day that I know of on that account. Since the ejection from the cars, there is never a day when I do a day's work, that I am free from the pains. Besides the blows, I think the railroad men did more than other men would have done under the circumstances. It was unnecessary to wrench me out of the seat with such violence. They might have lifted me out of the seat, and put me out quietly. I resisted precisely as I would if a gang of ruffians should attack me in the street. I grasped the arm of the seat instinctively. I do not particularly remember what the men did to get me out of the car, more than was necessary, after the blows were struck, in getting me to the platform of the car. I do not know whether blows were struck again, except from the reports of others. I was so excited, they

might have struck me all the way; I cannot swear one way or the other. I did not brace myself in the seat, nor assume a posture of resistance. When I went on board the train, I had not made up my mind to assert my right to ride on the coupon-ticket. I intended to use it if it was possible; that is, if the conductor would allow me. I always thought that I had that right, and think so still. I know that the judges have ruled differently, but in some things I hold to the right of private opinion. I made up my mind to use it in the cars, when the conductor threatened to throw me off. I thought the ticket entitled me to travel between the two points. Possibly there might be a mistake about that; but when he said he would take the law into his own hands and settle the matter, I determined I would not yield another inch to him.'

" Other witnesses for the plaintiff, some of them passengers in the car, testified substantially like the plaintiff, with the addition that the blows were struck by one of the men who came in with the conductor, except that only two witnesses saw the plaintiff put from the platform of the car to that of the station." One of these testified: " I was in the car and heard something going on, but intentionally paid no attention to it. I saw some one taken by me, and, after the person was taken out, I looked from my window and saw somebody's feet on the platform of the station, — the feet of a man lying down. There were a good many other people about there, but I saw no one else lying down." The other testified: " I was standing on the platform of the station, and saw the plaintiff brought out of the car and thrown on the platform of the station. They had hold of his head and shoulders and feet; perfectly helpless, of course. They dumped him down roughly. The men were on the platform of the station, so far as I could see, when they dumped him down. He struck very hard, they dumping him down bodily, and rather roughly. It was raining at the time, and the platform of the station was wet and muddy." Some witnesses for the plaintiff, who were passengers also, testified that there was no rush so as to crowd the party who were removing the plaintiff from the platform of the car to the platform of the station. None testified to any violence, after the blows, till they got to the platform of the car

" Several medical witnesses testified with regard to the plaintiff's physical condition, and all of them said that any violent strain on the abdominal muscles would involve danger of a rupture to one who had a tendency to hernia. The plaintiff said that he had on a truss at the time of the expulsion ; and some of the medical witnesses also said that, if when thrown upon the platform of the station he had struck upon the truss, that might have caused the rupture.

" The defendants contended that they had a right to expel the plaintiff from their car, using no unnecessary force ; and, to show what force was used, they called their conductor, station agent, and all their servants who had been concerned in the ejection. All of these testified, substantially, that the plaintiff refused to go out of the car, and said that they would remove him at their peril ; that the conductor told them to take him out carefully, and they took hold of him as gently as possible, he resisting with all his might, and carried him along the aisle, to the car-door ; that he struggled violently all the way, kicking and striking all within his reach, and biting severely the arm of one ; and that a crowd of passengers pushed them all down from the platform of the car to that of the station, and they all fell together. The testimony as to what took place after the expulsion was not materially disputed.

" The foregoing was substantially all the testimony in the case ; and the defendants asked for the following instructions to the jury :

" 1. That, under the facts claimed by the plaintiff, he was unlawfully in the defendants' car, and a trespasser therein.

" 2. That by the coupon-ticket, introduced in evidence, the plaintiff acquired no right to be in the defendants' cars.

" 3. That the defendants had a right to eject the plaintiff from their cars, and, in so doing, were justified in using not only force sufficient to expel him, but also sufficient to overcome his resistance to their efforts to expel him.

" 4. That the defendants, if liable at all, are only liable for a greater degree of force than was necessary or reasonable to remove the plaintiff from their cars, taking everything into consid-

eration, the exigency of the occasion, the resistance to be overcome and the end to be accomplished.

"5. That the plaintiff wrongfully refused to leave the defendants' car when requested, and the conductor and his assistants had a right to remove him, and his resistance to such removal was unlawful.

"6. That if the plaintiff in any degree by his own wrongful acts contributed to or occasioned his injuries, he cannot recover.

"7. That no compensation can be allowed the plaintiff for any injury resulting from or occasioned by his resistance to expulsion from the car.

"8. That the burden of proof is on the plaintiff to show, first, that he was free from any act contributing to his injuries; and second, that his injuries were occasioned solely by the unlawful acts of the defendants.

"9. That, if the jury find that the defendants used excessive or unreasonable force, and that the plaintiff resisted the application of that force, they must, in estimating the damages, separate the injury received from his resistance to the expulsion from the injury received in other ways.

"10. That, to justify the plaintiff in using resistance under the plea of self-defence, he must show that his resistance was solely calculated to overcome a force against which he had a right to defend himself.

"11. That the company is not responsible for any blow or act of violence on the part of their servants, provoked by an act of violence on the plaintiff's part, or justified by such act.

"12. That, in ejecting the plaintiff from the car, the defendants' employees had a right to suppose the plaintiff, unless notified to the contrary, to be a sound man ; and they are not responsible for any injury occasioned to a peculiar difficulty unknown to themselves and known to the plaintiff, unless cautioned in reference thereto. *a.* The plaintiff, being wrongfully in the car, and being a trespasser, and having been notified that he would be put out, upon his refusal to leave the car took upon himself the risk attendant upon his expulsion. If under such circumstances he had a disease not apparent to those ejecting him, and gave no

notice of such disease to those ejecting him, the defendants are not liable for any aggravation of such disease. *b.* The defendants, in this case, and under the circumstances proved, had a right to suppose that the plaintiff was a sound man, and are not liable for any injury occasioned by forcing his truss against a weak place in his body. *c.* The defendants are not liable for any aggravation of such a disease, but only liable for such violence as would have produced such results in a sound man. *d.* That there is not sufficient evidence on which to found a verdict for any unjustifiable violence on the part of the defendants, except the blows on the head; and as there is no evidence that such blows caused any injury to the plaintiff's hernia, hence the only question for the jury is, if they shall find that blows were struck unjustifiably by the defendants' servants, how much damage was done by such blows.

" 13. The conductor had a right to call to his assistance such employees as were necessary to remove the plaintiff; for their acts and the acts of the conductor the defendants are liable ; for the acts of any other persons they are not liable, unless knowledge is brought home to their conductor that such persons were acting in addition to the employees designated by him.

" The judge granted all but the twelfth of these prayers for instructions, with the modifications set forth below ; refused the twelfth prayer, and all its subdivisions ; and, after recapitulating the evidence, instructed the jury as follows :

" If the plaintiff was wrongfully in the defendants' car at this time, or if he wrongfully refused to leave the car when requested by the conductor, the defendants had a right to remove him by force, using such force only as was necessary and proper to accomplish the end they had in view ; and the defendants in such case are responsible only for such excessive or improper force as the plaintiff may show was exercised by them, the burden of proof in this matter being upon the plaintiff throughout the case. The plaintiff himself says that he was wrongfully ejected from the car, and he claims damages for that. He further says that, if liable to be ejected, the force used for that purpose was violent and excessive, and he claims damages for this excess of force used

upon him, complaining especially of certain alleged blows and of the manner in which he was put from the platform of the car upon the platform of the station. The defendants, on the contrary, say that they had the right to eject the plaintiff; and they further say that only such force was used as was rendered necessary for the purpose of ejecting him, by the resistance of the plaintiff. They deny that the blows were struck as alleged by the plaintiff himself; and say that, if struck, they were justified by the acts of the plaintiff himself; and with regard to the matter of the alleged falling, or throwing, from the platform of the car to the platform of the station, they say that that matter is misstated, and that whatever injury may have occurred there was merely a matter of accident, for which they are not personally responsible. This is the issue, as stated between the parties to this action, and this presents an issue of fact which it is peculiarly within your province to find; and I shall submit the case to you under the general statement of the law which I have already made, and under certain special rulings which are asked by the parties."

"The judge here instructed the jury in accordance with each of the prayers of the defendants, except the twelfth prayer and its subdivisions; and in regard to the twelfth prayer and its subdivisions instructed the jury as follows:

"If you find that force or violence, used by the defendants upon the plaintiff's person, was, under the instructions given you, unlawful, unjustifiable and excessive, the defendants took the responsibility of any secret disease which the plaintiff may have been suffering under, although not at that time communicated to them before the assault was made."

"The judge also gave the following general instructions: 'Upon this testimony therefore, and upon the law as stated to you by the court, you are to determine, first, whether the plaintiff was rightfully or wrongfully in the defendants' cars, — whether or not the defendants had a right to eject him from the car. If he was wrongfully there, as has been already stated to you, then the defendants would have the right to eject him; but in ejecting him they would have the right to use only such force as was rea-

sonable and necessary to effect the purpose in view. Did they use more force than was reasonable and necessary under the circumstances of the case ? If so, then for that excess of force the defendants would be liable to the plaintiff. If upon the facts of the case, applying to them the law which has been stated by the court, you are satisfied, by a fair preponderance of the evidence, that the plaintiff has sustained the burden of proof which is on him throughout, then he is entitled to your verdict. If he has failed to do so, then the defendants are entitled to your verdict.' Other instructions as to the measure of damages were given, which were not excepted to except as stated in the defendants' prayer.

"After the charge was concluded, the judge, at the plaintiff's request, modified the defendants' sixth prayer as follows : ' If the plaintiff in any degree by his own wrongful act contributed to or occasioned his injuries, he is not entitled to recover. You will confine that instruction to the acts of the plaintiff after the defendants attempted to remove him.'

"The jury found for the plaintiff ; and the defendants, feeling aggrieved by these rulings, refusals and instructions, asked for a new trial on the ground that the verdict was contrary to the instructions of the court and the evidence and weight of the evidence in the case, which having been refused, they file this bill of exceptions.

"The defendants' prayers were made before the charge to the jury was begun, and the defendants did not afterwards call the attention of the court to any particular part of the charge, or suggest any omission to give any part of the instructions prayed for, or request any alteration or modification thereof, in substance or form, except by their prayers for instructions. Throughout the trial, the plaintiff's counsel did not deny that the plaintiff was wrongfully in the defendants' car, and only claimed damages for excessive violence in removing him."

*Child & Child*, for the defendants.

*Sohier & Stevens*, for the plaintiff.

CHAPMAN, C. J. Throughout the trial, the plaintiff's counsel did not deny that the plaintiff was wrongfully in the defendants' car, and only claimed damages for excessive violence in removing

him. After the evidence was in, the defendants' counsel asked for certain instructions, which are stated in the bill of exceptions, being thirteen in number. The court refused to grant the twelfth, but granted the others with the modifications stated. The twelfth was as follows : " In ejecting the plaintiff from the car, the defendants' employees had a right to suppose the plaintiff, unless notified to the contrary, to be a sound man ; and they are not responsible for any injury occasioned to a peculiar difficulty unknown to themselves and known to the plaintiff, unless cautioned in reference thereto." As the action was for excessive violence, which would be unjustifiable, the request applied to such violence, and we do not think it states the law correctly. The plaintiff was not bound to give any notice for the purpose of lessening the effect of unjustifiable violence. It might have been otherwise if they were using reasonable force to expel him, and that force was doing him an injury by aggravating some secret disease. But this is not such a case.

Under the twelfth general request are four specifications. The first three are like the general request. The fourth is as follows : " That there is not sufficient evidence on which to found a verdict for any unjustifiable violence on the part of the defendants, except the blows on the head ; and as there is no evidence that such blows caused any injury to the plaintiff's hernia, hence the only question for the jury is, if they shall find that blows were struck unjustifiably by the defendants' servants, how much damage was done by such blows."

This request was rightfully refused, because there was evidence tending to show that there was excessive violence in throwing the plaintiff upon the platform. Nor was the judge bound to instruct the jury as matter of law what effect the blows upon the head would produce upon the hernia. It was a matter of fact, to be submitted to them. He gave general instructions in regard to it, which were correct, namely, that if the violence was unjustifiable and excessive the defendants took the responsibility of any secret disease which the plaintiff might have been suffering under, although not at the time communicated to them before the assault was made.

Certain expressions used by the judge in his instructions are objected to, on the ground that they neutralized the effect of his decision adopting the defendants' requests. We have given careful attention to them, because if they had such an effect they would do injustice to the defendants and the exceptions should be sustained.

As the matter is stated in the bill of exceptions, the judge commenced with the adoption of the defendants' requests, except the twelfth, with the modifications stated afterwards, and proceeded as follows: "If the plaintiff was wrongfully in the defendants' car at this time, or if he wrongfully refused to leave the car when requested by the conductor, the defendants had a right to remove him by force, using such force only as was necessary and proper," &c. It is contended that this language implies that it was a question for the jury to settle, whether the plaintiff was wrongfully there. We do not so understand it. After having instructed them that the plaintiff was there unlawfully, this was the natural and ordinary method of introducing the statement of what the defendants had thereupon a right to do. It is difficult to see how the jury could be misled by it.

The judge then states briefly the claims which were made by each party, and proceeds: "This is the issue as stated between the parties to this action, and this presents an issue of fact which it is peculiarly within your province to find." This general statement, that it presented an issue of fact, was strictly true. It does not state what the issue was; but he adds: "And I shall submit the case to you under the general statement of the law which I have already made, and under certain special rulings which are asked by the parties." He then called their attention to the rulings contained in the defendants' requests, as well as to his other rulings. We fail to see in this, or any of his subsequent statements, anything that can be understood as a submission of any matters of law to the jury. He did indeed say they were to determine whether the plaintiff was rightfully or wrongfully in the defendants' cars, and whether or not the defendants had a right to eject him from the car, but that it was under the principles of law stated by the court; and he added: "If he was

wrongfully there, as has been already stated to you, then the defendants would have a right to eject him." In all the statements which are criticised by the defendants' counsel, there is a reference to the principles of law by which the jury were to be governed in finding the facts, and these principles were stated correctly, and so plainly that we do not see any reason to suppose the jury misunderstood the charge.        *Exceptions overruled.*