COMMONWEALTH *vs.* ELIAS B. CHASE & another.

Bristol.   October 23, 1888. — November 26, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Evidence of Accomplice — Corroboration.*

At the trial of an indictment against two brothers for the burning of a barn, a boy, admitted to be an accomplice, testified that they set fire to the barn; that on a day prior thereto one of them expressed a wish that it might be a light night so that the barn might be set afire, and that on the day of the burning, during which he was at their house, they taunted the owner of the barn with regard to evidence previously given by him on a complaint against them. There was evidence from others, that the defendants had on other occasions taunted the owner of the barn because of such evidence, and threatened him with various harm; and that one of them, in the other's absence, had threatened to burn the barn. The defendants, who denied at the time of their arrest that the boy was at their house on the day of the burning, testified that he was at their house on that day. *Held*, that there was evidence tending to corroborate the boy's testimony.

INDICTMENT, against Elias B. Chase as principal and John F. Chase as accessory, for burning the barn of Gideon Horton.

At the trial in the Superior Court, before *Blodgett*, J., John F. Coates, who was fifteen years old, and was admitted to be an accomplice, testified that the defendants were brothers and lived together; that the barn was burnt about seven o'clock P. M. on Sunday, November 20, 1887; that he spent the previous Sunday at their house, at which time John said that he wished it would be a good light night, so as to set Horton's barn afire; that he spent Sunday, November 20, with them and at their house; that during the day the defendants taunted Horton with regard to evidence given by him in a complaint against them for keeping an unlicensed dog; that shortly after seven o'clock in the evening of that day John said that he thought it was a good night to set Horton's barn afire; that he then poured a quantity of kerosene oil into a bottle and handed it to Elias, telling him to take it and scatter it over the hay in the barn; that Elias took the bottle of oil and left the house, and about five minutes later John told the witness to go down to the barn; that he went to the barn as directed by John, whereupon Elias placed

him on guard but a short distance from the barn ; and that Elias then set the barn on fire.

There was also evidence from other witnesses tending to show that, prior to Sunday, November 13, the defendants had threatened various harm to Horton, because he had testified against them on a complaint for keeping an unlicensed dog, and had also taunted him with respect to the evidence which he then gave ; that John had told one O'Donnell, in August, 1887, when Elias was not present, that, if he " could not get away with Gid Horton, he would burn his barn up "; and that the defendants, just after their arrest upon the charge of burning the barn, denied that the boy Coates had been at their house on the day of the burning. The defendants testified that Coates was at their house' on Sunday, November 20, 1887.

The judge, as requested by the defendants, instructed the jury that it was not safe to convict the defendants on the uncorroborated testimony of an accomplice, and that, unless he was corroborated in some material fact, he should advise them to acquit ; but refused to rule, as further requested by the defendants, that, as matter of law, there was no evidence that tended to corroborate the accomplice as to any material fact, and instructed the jury, that, " if they found that the defendants made the threats testified to as before stated, the making of such threats tended to corroborate the testimony of Coates ; that if they believed the evidence of the officers, that the defendants, at the time of their arrest, denied that the Coates boy was with them on Sunday, the day of the fire, that would be a legal corroboration of the accomplice; that it would not be competent for them to convict John and acquit Elias ; and advised them to acquit both defendants if there was corroboration of the testimony of the accomplice as to John only."

The jury rendered a verdict of guilty ; and the defendants alleged exceptions.

*J. Brown & A. H. Hood*, for the defendants.

*H. C. Bliss*, Assistant Attorney General, for the Commonwealth.

DEVENS, J. The defendants were indicted for burning the barn of one Gideon Horton, Elias B. Chase as principal, and John F. Chase as accessory. At the trial, the prosecution relied

mainly upon the testimony of a boy named Coates, who appeared by his own testimony, and was conceded to have been, an accomplice. The defendants requested the court to advise the jury that it was not safe to convict the defendants on the uncorroborated testimony of an accomplice, and that, unless he was corroborated in some material fact, the court should advise the jury to acquit. This request was complied with; but the court declined to rule, in answer to the defendant's further request, that there was no evidence in the case that tended to corroborate the accomplice as to any such fact; and instructed the jury, that, if they found that the defendants had made certain threats testified to, the making of such threats tended to corroborate the testimony of Coates.

While these threats to injure Horton, and to revenge themselves for an injury, real or fancied, which he had done them, connected with evidence of taunts showing malice and ill-will, are very numerous, and are in various forms of expression, they are not the same, as regards time and place, as those facts testified to by the accomplice. The defendants therefore urge that they can have no legitimate tendency to corroborate his story. But evidence which tends to prove the guilt of a defendant is sufficient by way of corroboration, although it does not directly confirm any particular fact stated by the accomplice.

" We think the rule is," says Mr. Justice Morton in *Commonwealth* v. *Bosworth*, 22 Pick. 397, " that the corroborative evidence must relate to some portion of the testimony which is material to the issue." The accuracy of this statement has never been questioned, and, " Taking the whole paragraph together," says Chief Justice Gray in *Commonwealth* v. *Holmes*, 127 Mass. 424, " it is manifest that the phrase ' material to the issue ' is used as equivalent to ' involving the guilt of the party on trial,' or ' having necessary connection with the guilt of the defendant.' "

That threats made by the defendants to inflict serious injury on the party whose barn was burned were admissible as independent evidence, having a tendency to show that they were the guilty parties, cannot be controverted. *Commonwealth* v. *Goodwin*, 14 Gray, 55. Proof of a motive and intent to commit a crime, which there was evidence to show had been committed

by the defendants, was material to the issue, and would legitimately tend to strengthen a belief in the statement of the accomplice that they had committed it. Only one of the defendants appears to have been present when the direct threat of burning the barn was made; but the defendants requested no ruling as to the evidence of threats, as it bore upon them individually. If it had been made, it would only have shown that the corroboration of the accomplice was stronger as to the one making this threat than as to the other, whose threats as testified to were less definite, but which still, whether made by himself or by his co-defendant and assented to by himself, were enough to show an intent and a disposition to injure Horton.

The court further instructed the jury, that, if they believed the evidence that the defendants at the time of their arrest denied that the Coates boy was with them on Sunday, the day of the fire, this would be a legal corroboration of the accomplice. This ruling was made in connection with the fact, that, at the trial, the defendants had both testified that the Coates boy was with them on Sunday. The circumstance that the accomplice was with the defendants on that day is of the utmost importance. If he was not, his story was necessarily false. Their original denial showed that they were seeking to maintain by falsehood a defence to the charge made against them, bore directly on the question of their guilt, and tended to prove it. Whether the mere fact that the boy was with them on that day, if that were all, would corroborate his testimony, we need not consider. Their denial that he was there, and the subsequent proof of its falsity, were facts of importance.

*Exceptions overruled.*