COMMONWEALTH *vs.* MARTIN J. CROWE.

Middlesex.   November 25, 1895. — January 3, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Arson — Evidence.*

At the trial of an indictment for burning a dwelling-house which had been purchased by the combined earnings of the defendant and other members of the family, there was evidence that, fourteen months before the burning, he threatened " that unless his mother got something out of the property he would burn the building."   His mother had got something out of the property, but it appeared that there was ill feeling between the defendant and his sister at the time of the threat, which continued to the time of the burning, his sister continuing to occupy a part of the building during this time.   *Held,* that the evidence was competent.

At the trial of an indictment for burning a dwelling-house which had been purchased by the combined earnings of the defendant and other members of the family, it appeared that, on the morning after the fire, the defendant, while near the premises, asked his brother in law, "Is this the place where the fire was ? " who answered, "Don't you know it is ? " whereupon the defendant laughed.   A

policeman who overheard the conversation then arrested the brother in law for drunkenness, and the defendant said, "You want to arrest him to find out what he knows about who set the fire." *Held,* that the evidence had some tendency to show guilty knowledge on the part of the defendant, and was admissible, in the discretion of the court, in connection with the other evidence in the case.

INDICTMENT alleging that the defendant, on March 3, 1895, at Malden, " the dwelling-house of one Ella F. R. Downes feloniously, wilfully, and maliciously did burn." At the trial in the Superior Court, before *Sherman,* J., there was evidence tending to show that the dwelling-house had stood in the name of Margaret Mallon, a married sister of the .defendant, having been purchased by the combined earnings of the defendant and other members of the family; that the title had been so put in her name before her marriage, the family occupying before the marriage the lower tenement together, and renting the upper, and after the marriage Mallon and her family occupying the upper tenement, and the defendant with his mother and brothers remaining in the lower; that in January, 1894, a controversy arose as to the relative interests of the several members of the family in the property ; that in settlement thereof the property was sold to Downes, and the defendant's mother received four hundred and fifty dollars as a result of negotiations which continued through the summer, ending in August, 1894, at which time the defendant with his mother and brothers moved out of the house into a tenement a few feet away, leaving Mallon in occupancy of the upper tenement, and the lower tenement was leased, these tenants being in occupancy at the time of the alleged burning; that there were quarrels in the family pending the negotiations through the summer, and a complaint was made to court; and that after the settlement and the moving out of the defendant there was no communication between him and his sister, but there was no evidence of any conflict between them.

The government offered evidence tending to show that, fourteen months before the alleged burning, the defendant said " that unless his mother got something out of the property he would burn the building," to the admission of which the defendant objected. The judge admitted the evidence, provided the government showed, as contended, that the ill feeling which existed at the time of the threat between the defendant and his

sister continued down to the time of the fire. The government subsequently offered evidence tending to show such fact, and the defendant excepted.

The government offered a conversation overheard by a police officer between the defendant and one Donahue, a brother in law of the defendant, which took place the next morning near the premises, in substance as follows : the defendant asked, " Is this the place where the fire was ? " and Donahue answered, " Don't you know it is ? " which was followed by laughter on the part of the defendant ; to which the defendant objected. The judge admitted the conversation ; and the defendant excepted.

Directly after the above conversation, the police officer arrested Donahue for drunkenness, and the government offered a certain statement of the defendant to the officer at the time of the arrest, all of which was denied by the defendant, to wit : " You want to arrest him to find out what he knows about who set the fire." The judge admitted the evidence ; and the defendant excepted.

The jury returned a verdict of guilty ; and the defendant alleged exceptions.

*M. Coggan*, for the defendant.

*F. N. Wier*, District Attorney, for the Commonwealth.

LATHROP, J. 1. The evidence of the threat of the defendant to burn the building, made fourteen months before the act for which he was indicted, was properly admitted. While the threat was " that unless his mother got something out of the property he would burn the building," and while it appeared that his mother had got something out of the property, yet, as the evidence showed that there was ill feeling between the defendant and his sister at the time of the threat, and that this ill feeling continued to exist down to the time of the burning, his sister continuing to occupy a part of the building during this time, the evidence was competent. *Commonwealth* v. *Goodwin*, 14 Gray, 55. *Commonwealth* v. *Chase*, 147 Mass. 597. *Commonwealth* v. *Quinn*, 150 Mass. 401. *Commonwealth* v. *Holmes*, 157 Mass. 233, 240.

2. The morning after the fire, the defendant, while near the premises, said to his brother in law, one Donahue, " Is this the place where the fire was ? " Donahue answered, " Don't you

know it is ? " This was followed by laughter on the part of the defendant. All this was overheard by a police officer, who directly afterwards arrested Donahue for drunkenness. The defendant then said, " You want to arrest him to find out what he knows about who set the fire." The defendant denied that he made this last statement; and all of the evidence was excepted to.

We are of opinion that the evidence had some tendency to show guilty knowledge on the part of the defendant, and was admissible, in the discretion of the court, in connection with the other evidence in the case. *Commonwealth* v. *McCabe,* 163 Mass. 98. *Commonwealth* v. *Welch,* 163 Mass. 372.

*Exceptions overruled.*