WILLIAM H. CONKLIN *vs.* CONSOLIDATED RAILWAY
COMPANY.

Hampshire.    September 17, 1907. — October 15, 1907.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Evidence*, Statement of agent, *Res gestae*, Relevancy and materiality.    *Agency.*
Street Railway.    Damages.    Malicious Prosecution.    Assault.    False Arrest.

There is no difference between declarations made after and those made before the event in question, in the application of the principle that a mere declaration of a servant or agent, not made within the scope of his employment or authority, is inadmissible in evidence against his employer or principal unless it either accompanies an act which is itself competent and material to be proved and which it tends to qualify, characterize or explain, or it is itself a part of the transaction under investigation.

At the trial of an action against a street railway company for an assault alleged to have been committed upon the plaintiff by the conductor in charge of a car operated by the defendant while the plaintiff was a passenger thereon, it was admitted that there was an encounter between the conductor and the plaintiff, but there was much contradictory evidence as to which of them was the aggressor.    The presiding judge permitted a witness for the plaintiff to testify that, a "comparatively short time" before the encounter, but at a time when the plaintiff was not on the car, the conductor had stated to the witness that he "would assault some one on the car before he got through," and instructed the jury to consider the testimony only upon the question whether the conductor did or did not begin the assault.    *Held*, that, while a different conclusion would have been reached if the conductor were the defendant in this case, the evidence should not have been admitted against the conductor's employer, since it did not constitute part of the *res gestae.*

Evidence is admissible, at the trial of an action by a physician against a street rail-

way company for assault, false arrest and malicious prosecution, to prove, upon the question of damages, the professional standing and reputation of the plaintiff and the nature and extent of his practice before and after the injury.

At the trial of an action by a physician practising in Ansonia for assault, false arrest and malicious prosecution, where it was competent to prove, upon the question of damages, the professional standing and reputation of the plaintiff and the nature and extent of his practice before the injury, another physician, testifying for the plaintiff, had stated that, during twenty years' acquaintance with the plaintiff, he had " run across " him or " had to do with him profession-ally " many times. He then was asked if he knew about the nature and extent of the practice the plaintiff had had, and replied "I have been for considerably over twenty years called in consultation by various physicians " in Ansonia " and believe that " the plaintiff " has for twenty years had the largest practice " there, " that no physician there has had as extensive or desirable a practice." The defendant excepted to the admission of the testimony generally, but not specifically. *Held*, that the presiding judge was warranted in finding that the witness's knowledge of the matters inquired about was sufficient to qualify him to testify; but *quaere*, whether, if specific objection had been taken to the answers given, they would have been admissible.

At the trial of an action against a street railway company for malicious prosecu-tion, there was evidence tending to show that, while the plaintiff was a passenger upon a car operated by the defendant, the conductor without provocation com-mitted an assault upon him, that, arriving at a terminal of the line and searching for a police officer to arrest the conductor, he was told by a superintendent of the defendant that he, the superintendent, was a " railway policeman," that the superintendent, being asked by the plaintiff to arrest the conductor, after a con-versation apart with the conductor, refused to do so, but arrested the plaintiff and took him without the conductor to a police station and charged him with assaulting the conductor, that, because the assault was alleged to have been committed in another town, the plaintiff was taken by a police officer unaccom-panied by the superintendent to a police station in that town where, on a com-plaint charging him with assaulting the conductor, a warrant was issued for his arrest and he was arrested and subsequently tried and acquitted, and that, before that trial, the general manager of the defendant stated that, if the plain-tiff " wanted to see him, he could settle it now; if not, he could go ahead." *Held*, that there was evidence warranting the submission of the case to the jury.

At the trial of an action in three counts against a street railway company for assault, false arrest and malicious prosecution, there was evidence tending to show that there had been an encounter between the conductor in charge of an electric car operated by the defendant and the plaintiff, a passenger, and that subsequently the plaintiff was arrested and prosecuted by the defendant's agents for assaulting the conductor. There was much contradictory evidence as to who was the aggressor in the encounter between the conductor and the plaintiff. The defendant asked the presiding judge to instruct the jury that, "if the plain-tiff was the aggressor and made an unjustifiable assault on " the conductor, he could not "recover on his count for malicious prosecution, nor on his count for his arrest and assault." The request was refused. *Held*, that, while the request contained a correct statement of the law as to the count for malicious prosecu-tion, it could not have been given in full because, although the plaintiff were the aggressor, the defendant would have been liable on the count for assault if the conductor had used excessive force upon him.

TORT, in three counts, the first for assault, the second for false arrest and the third for malicious prosecution. Writ in the Superior Court for the county of Hampshire dated July 28, 1905.

There was a trial before *Brown*, J. The plaintiff's evidence tended to show that, while he was a passenger on an electric car of the defendant proceeding from New Haven toward Derby, in Connecticut, he was, without provocation on his part, assaulted and very severely beaten by the conductor and motorman in charge of the car at a place called Yale Field in the town of Orange. He rode back on the same car into New Haven and, in searching for a police officer to arrest the conductor, came upon one Judge, a superintendent of the defendant, and asked to be shown a police officer. Judge said he was a railway policeman and, upon being informed what the plaintiff wanted, had a very short conversation apart with the conductor and then arrested the plaintiff and conducted him without the conductor or motorman, whom he refused to take from the car, to police headquarters in New Haven, whence, it being learned that if any assault had occurred, it had occurred in the town of Orange, the plaintiff without Judge was taken by an officer to a police headquarters in that town, was there charged with breach of the peace "by tumultuous and offensive carriage, noise and behavior," and by "threatening, traducing, quarrelling with, challenging, assaulting and striking" the conductor, and was released on bail. Subsequently he was tried, found not guilty and discharged.

There was evidence that, just before the trial of the criminal complaint against the plaintiff, one Cook, in conversation with one Punderford, general manager of all of the defendant's lines, expressed regret that Punderford had not been there at the time of the arrest as he "might have settled it," and that Punderford replied that he, too, was sorry, "that he would have settled it, and if the doctor [meaning the plaintiff] wanted to see him he could settle it now ; if not, he can go ahead."

One Russell, testifying on behalf of the plaintiff, stated that he had known him over twenty years. He then was asked, "How frequently during your practice during that time have you probably run across Dr. Conklin, or had to do with him pro-

fessionally?" and replied, "Very many times, cannot state how many." The following testimony then was given by him, subject to exception by the defendant:

"Q. Do you know about the nature and extent of the practice that Dr. Conklin had had? A. I have been for considerably over twenty years called in consultation by various physicians to that town. I believe that Dr. Conklin has for twenty years had the largest practice in Ansonia."

"Q. And the nature and kind of his practice? A. That no physician there has had as extensive or desirable a practice."

At the close of the evidence, the defendant made the following requests for rulings, among others:

6. There is no evidence to sustain the allegation of the third count of the declaration and the verdict must be for the defendant on that count.

9. If the plaintiff was the aggressor and made an unjustifiable assault on either motorman or conductor he cannot recover on his count for malicious prosecution, nor on his count for his arrest and assault.

Other facts are stated in the opinion.

*J. C. Hammond*, for the defendant.

*R. W. Irwin*, (*E. W. Hardy* with him,) for the plaintiff.

SHELDON, J.   The witness Jacobs was allowed against the exception of the defendant to testify that the defendant's conductor Killoy, while on the defendant's car, had said in a talk with the witness that he would assault some one on the car before he got through. The plaintiff was not on this car, and the time of the talk is no further fixed than by the witness's statement that it was a "comparatively short time" before the alleged assault on the plaintiff. It was agreed on both sides that there was an encounter between the conductor and the plaintiff; but there was much contradictory evidence as to which of them was the aggressor. The jury were instructed to consider this testimony of Jacobs only upon the question whether the conductor did or did not begin the assault.

The plaintiff's counsel contend that this evidence was competent on the general doctrine that upon the issue whether a person has done an act, evidence of an intention or design in his mind to do that act is material, and that his contemporaneous

acts and declarations tending to show that he has such intention are competent to show this fact. *Commonwealth* v. *Trefethen*, 157 Mass. 180. *Inness* v. *Boston, Revere Beach & Lynn Railroad*, 168 Mass. 433. *Viles* v. *Waltham*, 157 Mass. 542. *Commonwealth* v. *Crowley*, 165 Mass. 569. If this action were against the con-ductor himself, the plaintiff's contention would be well founded. A defendant's intention or preparation to commit the particular wrong which it is charged that he afterwards did commit may always be shown in evidence against him. There are many decisions to this effect. *Commonwealth* v. *Williams*, 2 Cush. 584. *Commonwealth* v. *Choate*, 105 Mass. 451. *Commonwealth* v. *Chase*, 147 Mass. 597. *Commonwealth* v. *Quinn*, 150 Mass. 401. *Commonwealth* v. *Crowe*, 165 Mass. 139. Nor is it necessary that a threat of violence such as was here in question should be directed against the particular person upon whom the wrong was after-wards committed, if there was such a general threat or such an indication of a general malicious intent as could properly be found to have included that person within its scope. *Commonwealth* v. *Snell*, 189 Mass. 12. *State* v. *Lapage*, 57 N. H. 245. *Hopkins* v. *Commonwealth*, 50 Penn. St. 9. *State* v. *Grant*, 79 Mo. 113. *Dixon* v. *State*, 13 Fla. 636. *Shaw* v. *State*, 102 Ga. 660. *Burton* v. *State*, 115 Ala. 1. *People* v. *Craig*, 111 Cal. 460.

But in our opinion the question of the admissibility of this evidence must be determined upon the principle that the mere declaration of a servant or agent, not within the scope of his employment or authority, is admissible against his employer or principal only when it constitutes a part of the *res gestæ*, when it either accompanies an act which is itself competent and ma-terial to be proved and which it tends to qualify, characterize or explain, or when it is itself a part of the transaction under investigation. It is conceded that this is the general doctrine both of our own decisions and of those of other jurisdictions. *Lund* v. *Tyngsborough*, 9 Cush. 36. *Nutting* v. *Page*, 4 Gray, 581, 584. *Brookfield* v. *Warren*, 128 Mass. 287. *Morrison* v. *Lawrence*, 186 Mass. 456, 458. *New Jersey Steamboat Co.* v. *Brockett*, 121 U. S. 637. *Vicksburg & Meridian Railroad* v. *O'Brien*, 119 U. S. 99. *Patterson* v. *Wabash, St. Louis & Pacific Railway*, 54 Mich. 91. *Chicago & Northwestern Railway* v. *Fill-*

*more,* 57 Ill. 265.   *Marion* v. *Chicago, Rock Island & Pacific Railway,* 64 Iowa, 568.   *Forsee* v. *Alabama Great Southern Railroad,* 63 Miss. 66.   *Alabama Great Southern Railroad* v. *Frazier,* 93 Ala. 45.   *Alabama Great Southern Railroad* v. *Hawk,* 72 Ala. 112. We perceive no logical difference in the application of this principle between declarations made before and those made after the event in question.   *Mobile & Montgomery Railroad* v. *Ashcraft,* 48 Ala. 15.   *San Antonio & Aransas Pass Railway* v. *Robinson,* 73 Texas, 277.   *Louisville & Nashville Railroad* v. *Stewart,* 56 Fed. Rep. 808.   And the very argument made here, that such declarations, even though not in themselves binding upon the master, are yet competent to show the state of mind or the intention of the servant who made them, has been held to be unavailing.   *Newsom* v. *Georgia Railroad,* 66 Ga. 57.   *International & Great Northern Railroad* v. *Telegraph & Telephone Co.* 69 Texas, 277.   It is no more competent for a mere servant to make evidence against his employer by an antecedent statement or manifestation of his feelings than by any other admission which he may be willing to make.

We need not consider whether this evidence would have been admissible if the declaration had been made while the plaintiff was on the car and with direct reference to him.   Under the circumstances before us, the question presented is almost exactly the converse of that which was considered in *Bonino* v. *Caledonio,* 144 Mass. 299, 402, and must be governed by the reasoning of that case.   We are unable to avoid the conclusion that this evidence ought not to have been admitted; and it undoubtedly must have been prejudicial to the defendant.

The exception to the admission of Dr. Russell's testimony cannot be sustained.   It was competent to prove the professional standing and reputation of the plaintiff and the nature and extent of his practice before and after the injury, upon the question of damages.   *Wheeler* v. *Hanson,* 161 Mass. 370.   *Rooney* v. *New York, New Haven, & Hartford Railroad,* 173 Mass. 222. *Harmon* v. *Old Colony Railroad,* 168 Mass. 377.   *George* v. *Haverhill,* 110 Mass. 506.   And the judge properly might find that the. witness had sufficient acquaintance with the plaintiff's practice to answer the questions put to him.   *Pierce* v. *Boston,* 164 Mass. 92.   *Amory* v. *Melrose,* 162 Mass. 556.   *Prendible* v. *Connecticut*

*River Manuf. Co.* 160 Mass. 131. *Lawrence* v. *Boston,* 119 Mass. 126. *Lawton* v. *Chase,* 108 Mass. 238. *Moulton* v. *Mc Owen,* 103 Mass. 587. The witness's knowledge was greater than that of the witnesses whose testimony was excluded in *Nelson* v. *Boston & Maine Railroad,* 155 Mass. 356. If specific objection had been taken to the witness's answers, a more difficult question might have been presented; but this is not shown to have been the case. *Putnam* v. *Harris,* 193 Mass. 58, 62, 63. Nor does it appear whether any or what additional testimony was offered upon the subject. We cannot say that there was error in this ruling. *Lund* v. *Tyngsborough,* 9 Cush. 36. *Commonwealth* v. *Sturtivant,* 117 Mass. 122. *Stone* v. *Commonwealth,* 181 Mass. 438.

There was no error in refusing the defendant's sixth request for rulings. The jury had a right to find that the prosecution was instituted by its conductor and its servant, Judge, maliciously and without probable cause, and that they acted within the scope of their authority from the defendant in what they did. *Krulevitz* v. *Eastern Railroad,* 140 Mass. 573, 575. They also might find on the evidence of Cook that before trial the prosecution was made known to Punderford, a manager or superintendent of the defendant, and was ratified by him. The evidence of such a ratification by assenting to the prosecution and intimating a readiness on his part either to settle it or allow it to go on, was stronger than that which was held to be sufficient in *White* v. *Apsley Rubber Co.* 194 Mass. 97.

The defendant's ninth request undoubtedly contains a correct statement of the law as to the count for malicious prosecution, although plainly it could not have been given in full, for the defendant of course would have been liable on the first count although the plaintiff was the aggressor and made an unjustifiable assault on the motorman or conductor, if the defendant's servants then used excessive force upon him. *Brown* v. *Gordon,* 1 Gray, 182. *Coleman* v. *New York & New Haven Railroad,* 106 Mass. 160. *Collins* v. *Wise,* 190 Mass. 206. But the plaintiff contends that, so far as it applied to the count for malicious prosecution, this instruction was given in substance. As, however, there must be a new trial on account of the admission of the testimony of Jacobs, and as the question is hardly likely to

arise again in exactly the same way, it is unnecessary to consider this exception further.

The many other exceptions taken by the defendant have not been argued and we treat them as waived.

*Exceptions sustained.*