CLARA E. WEBBER *vs.* OLD COLONY STREET RAILWAY COMPANY.

GEORGE M. WEBBER *vs.* SAME.

Plymouth.    November 16, 1911. — January 2, 1912.

Present: RUGG, C. J., HAMMOND, BRALEY, & SHELDON, JJ.

*Negligence*, Street railway, *Res ipsa loquitur*. *Practice, Civil*, Findings of trial judge, Presumptions and burden of proof, Exceptions. *Damages*, In tort.

At a trial before a judge, without a jury, of an action by a woman against a street railway corporation for personal injuries sustained when the plaintiff was a passenger on a car of the defendant, where there is evidence that the plaintiff's injuries were occasioned by a jolt which caused one side of the forward part of

the car to rise and lifted the plaintiff some inches from her seat so that she fell back with a hard thump, if the judge finds, on evidence warranting such findings, that the jolt was not due to a defective condition of the car or to any defect in the roadbed or track or to any negligence in the operation of the car, these findings of fact, depending on the weight of testimony and the credibility of witnesses, are not open to review upon exceptions.

At the trial before a judge, without a jury, of an action by a woman against a street railway corporation for personal injuries sustained when the plaintiff was a passenger on a car of the defendant, where it appears that the plaintiff's injuries were occasioned by a jolt which caused one side of the forward part of the car to rise and lifted the plaintiff some inches from her seat so that she fell back with a hard thump, this is not to be regarded as an ordinary incident of travel, and, if unexplained, is evidence of the defendant's negligence, but it does not change the burden of proof which still is upon the plaintiff, and if the judge finds, on evidence warranting such findings, that the jolt was not due to a defective condition of the car or of the roadbed or the rails, but probably was due to a small obstruction upon the surface of one rail, which the forward wheel probably removed or crushed, and that the motorman was not negligent in failing to see this small obstruction which must have been upon a curved portion of the track, a finding of the judge that the plaintiff has not sustained the burden of proof is justified.

In an action of tort by a woman against a street railway corporation for personal injuries alleged to have been caused by a violent and unusual jolt of a car of the defendant in which the plaintiff was a passenger, where there was evidence that the plaintiff was suffering from physical conditions which made her peculiarly susceptible to a particular form of injury from the violent jolting of the car, it was *said*, that if the plaintiff proved that the unusual jolt was caused by the defendant's negligence and that it was the proximate cause of her injury, it was not necessary for her " to prove that the jolt was such that it would have caused, or was sufficient to cause, actual injury to a passenger in normal health in the same situation."

An exception of a plaintiff in an action of tort to a ruling of the judge before whom the case was tried without a jury, which was an incorrect statement of law unfavorable to the plaintiff, will not be sustained if the findings of fact made by the judge, on evidence warranting such findings, establish conclusively that the defendant was without fault and was not liable to the plaintiff in any event, so that the erroneous ruling became immaterial and the plaintiff was not harmed by it.

Two ACTIONS OF TORT, the first by a married woman for personal injuries alleged to have been sustained by her while a passenger in an electric car of the defendant in the town of Whitman on May 2, 1907, and the second by the husband of the plaintiff in the first case for expenses incurred by reason of her injuries and for loss of consortium. Writs dated October 28, 1907.

In the Superior Court the cases were tried together before *Schofield*, J., without a jury.

The evidence showed that the occurrence which resulted in the wife's injury took place on a car of the defendant running

from Whitman to Bridgewater, by the way of East Bridgewater, where the plaintiffs and all of the other passengers called as witnesses lived.  The plaintiffs had been to Boston for the afternoon, and were returning home.  They travelled from Boston to Whitman on the steam cars, and took the electric street car of the defendant at Whitman at a few minutes after 6 o'clock P. M. They were due at East Bridgewater at about 6.25 o'clock P. M. Nothing unusual occurred until the car was about half a mile out from Whitman village on School Street, so called.  At this place the defendant's single track was straight and level except for a slight curve and down grade.  The witnesses testified that the jolt afterwards described occurred near or at this curve or bend in the track.

The car was proceeding along at its ordinary rate of speed, according to the testimony of all the witnesses.  There were in it five passengers, all of whom were witnesses for the plaintiffs, besides the motorman, who was on the front platform, and the conductor, who was on the rear platform.  The car was a closed box car of the old fashioned type, single truck, four wheels, the seats running lengthwise on either side.  The seats were upholstered with leather-covered cushions without springs. The plaintiff in the first case, hereinafter called the plaintiff, was seated well forward on the left hand side of the car, about one third of the way back from the front door.

The plaintiff testified as follows: " Well, the car was running along smoothly, at its usual rate of speed, I should imagine.  Suddenly there came a most tremendous jouncing.  It seemed as if the forward wheel . . . There came this tremendous jounce, . . . I was thrown some inches in the air. . . . It threw me several inches from the seat and I came down with a hard thump. Q. The car, or you or both?  A. I should say both."

One McDermott, a passenger, testified that " It was an awful jounce anyway."  Other passengers described what happened as a " jar " or " jolt."

The plaintiff's husband, the plaintiff in the second case, when asked to describe what happened, testified as follows: " I couldn't say the exact spot, but near that bend when we were going along, I should say, at perhaps a moderate speed — I don't know just what the speed is there, but it didn't seem any different at

that point from any other point, going along, and the car suddenly gave a jump or a jerk — I don't know just how to explain it. It was an up and down motion. I think that practically covers it." He further testified, "We were going along, and the car was headed toward East Bridgewater, when it gave a kind of an upward jump movement, like that, as if it was going over something, and it seemed as if the forward left wheel went up on to something. Of course, when it came down on to the track I couldn't help but notice a sound, like that [indicating], as if it had been on something and dropped. That is as near as I can explain it."

There was medical testimony in regard to the physical condition of the plaintiff before and after the occurrence and that the "jounce" of the car might have produced a displacement of the uterus from which the plaintiff suffered.

The motorman who was on the car testified that he had no recollection of anything unusual or extraordinary happening on the trip referred to, that he had been over that track twice that same evening before the accident, and that the track at that point was in good condition; that it was more or less grass grown between the rails in places. The conductor on the car testified that he knew both of the plaintiffs by sight; that he first heard of the alleged injury the latter part of August, 1907; that he recollected nothing out of the ordinary on this trip of May second; nothing like what had been described; that he reported nothing; that it would have been his duty to report anything out of the ordinary; that he did not recall the names of any of the passengers on this car, or anything about it.

"There was sufficient evidence from employees of the defendant to justify the finding (if material), that there was no defect in the permanent condition of the roadbed, or of the rails, at the point where the accident occurred."

The foreman of the car barn on this division "testified that he first had his attention called to the condition of the car on which the accident occurred two weeks before the trial; that he then consulted the 'log book' in which is put down the result of the inspections of the different cars; that each car is inspected on the night before it goes out; that the inspection is not done by him personally, but under his directions; that each car is in-

spected by three different men, each of whom inspects a different part of it; that his log-book did not show the names of the inspectors, but he could tell, if he were to look it up, who they were; that if anything was wrong and required repairing, it was the duty of these men to make a verbal report of the same to him; that he would thereupon enter on the log-book the defect and number of the car; that if no defect was reported he simply entered the number of the car; that for May 2, 1907, he had entered only the number of the car.   An inspection of each car in use was made every other day."

At the close of all the evidence, the plaintiff in the first case made the following requests for rulings, and the plaintiff in the second case asked that they might be considered as made in his case also, so far as applicable thereto:

" 1.  On all the evidence, the defendant is liable in damages to the plaintiff.

" 2.  On all the evidence, if the court is satisfied that the cause of the plaintiff's injury was the jolt or jounce of the car, as testified to by her and her witnesses, the defendant is liable.

" 3.  A street railway company is liable in damages to a passenger injured while in her seat by an unusual jolt or jounce of the car in which she is riding, in the absence of any explanation by the company of the cause.

" 4.  Where an accident, such as the one in this case, happens without its appearing affirmatively that the cause was not the result of the defendant's negligence, the defendant is liable.

" 5.  Where an accident, such as the one in this case, happens without its appearing affirmatively that the defendant's negligence in no way contributed to the cause, the defendant is liable.

" 6.  A street railway company is liable in damages to a passenger injured while in her seat by an unusual jolt or jounce of the car in which she is riding, in the absence of evidence showing that the same could not have been prevented by the exercise of the highest degree of care on the part of the company consistent with its contract to carry the passenger safely.

" 7.  If the jolt or jounce described by the plaintiff's witnesses resulted from some cause beyond the defendant's control, it is incumbent upon the defendant to establish this fact by a preponderance of the evidence, in order to avoid liability for the

plaintiff's injury, provided the other elements of her case are made out.

" 8. If the injury to the plaintiff was the result of the act of some third party to the contract between her and the defendant, and no negligence on the part of the defendant in any way contributed thereto, it is incumbent upon the defendant to establish these facts by a preponderance of the evidence in order to avoid liability for the plaintiff's injury, provided the other necessary elements of her case are made out.

" 9. The duty of a street railway company to a passenger in such a case as the one at bar is the same when the car is travelling along a country road as when it is travelling through a city street; in the case at bar, if the highest degree of care consistent with the nature of its contract to carry the plaintiff safely would have kept the rail clear of obstacles and it was not kept clear, the defendant is liable.

" 10. To escape liability for such an accident as the one in this case, the defendant must show that it could not have been prevented by the highest degree of care consistent with the nature of its contract with the plaintiff; and the defendant does this only by excluding by affirmative evidence all the ways in which the accident might have happened as a result of its own negligence.

" 11. The defendant is none the less liable if the plaintiff was in a physical condition which made her more susceptible than most other women would have been to such an injury as that which she sustained in this case. The sole question on this branch of the case is, — was the jounce the proximate cause of the injury?

" 12. If no displacement of the uterus of the plaintiff has been shown to exist prior to the accident of May 2, 1907, and the jounce or jolt then experienced by the plaintiff caused or aggravated a nervous or run-down condition which resulted in a displacement, the defendant is liable, even if the court finds that the jar or jolt did not at once displace the uterus."

The judge filed the following " findings of fact and rulings " in the first case:

" 1. On May 2, 1907, while the plaintiff was a passenger on a car of the defendant, in Whitman, a jolt occurred which lifted

the plaintiff from her seat, but did not cause her to fall. The left forward wheel of the car rose suddenly and dropped with violence, but the forward motion of the car on the rails was not otherwise interrupted.

" 2. The plaintiff at the time of the jolt was sitting in her seat, in the usual manner, on the left hand side, about one third of the distance from the front, in a car with two parallel seats, one on each side of the car, and a passageway between. She felt a momentary faintness and nausea, and as if something had given away internally, but did not notify the conductor or motorman of any injury either then or at any time before leaving the car.

" 3. Upon leaving the car at East Bridgewater further symptoms of injury appeared, and the medical testimony in the case shows that the plaintiff was then and is now suffering from a displacement of the womb.

" 4. The plaintiff was entirely free from contributory negligence.

" 5. Neither the motorman nor the conductor noticed the jolt at the time, and nothing occurred to identify it in their minds, or to call it to their attention as in any respect unusual or followed by unusual results. The case is entirely bare of any evidence to explain the jolt, except as such explanation can be inferred from the description of it by the plaintiff and other passengers, and from the fact that it occurred, according to the testimony of the plaintiff, upon a curve, or just before the car entered upon a curve, in the rails.

" 6. The court rules, as a matter of law as between passenger and carrier, that the occurrence of a jolt, with evidence of injury to the passenger as a result, the passenger being at the time in the exercise of due care, is a circumstance for the jury, or for the judge trying the case without a jury, to be considered as evidence from which negligence of the carrier or its servants may or may not be inferred. The jolt does not raise a presumption of negligence as matter of law (*presumptio juris*), but is simply evidence which may or may not be sufficient to support an inference of negligence in any given case.

" 7. From the description of the jolt in this case the court believes and finds, as a fact, that it was not due to a defective condition of the car or of the roadbed or of the rails, but was

probably due to a small obstruction upon the surface of the left rail. The forward wheel probably removed or crushed this obstruction, as there is no evidence that the left rear wheel did not pass smoothly over the point on the rail where the front wheel rose suddenly and dropped with violence, causing the jolt.

" 8. It is, as matter of law, the duty of the servants of the carrier to use the highest degree of vigilance in regard to the condition of the rails. This duty falls especially upon the motorman, from the position of advantage in which he stands. In this case neither the motorman nor the conductor noticed any obstruction. Can the court properly infer from the jolt in this case that there was negligence in operating the car by reason of the fact that the motorman or conductor had not seen an obstruction on the rail which was the actual cause of the jolt? Manifestly, this is a pure question of fact, depending upon the circumstances of the case. If there had been a rock of a ton weight across the rail, and the car bumped into it, before the motorman saw it, the inference of negligence would be almost unavoidable. In this case the obstruction, whatever it was, could not have been large, and it might have been on the rail but a short time. In view of the high degree of care required of the motorman in keeping an eye upon the rails, the court might feel justified in drawing the inference of negligence if the rail at the place of the jolt was a straight rail. When, however, it is remembered that the rail was not straight at that place, and that the motorman probably could not detect an obstruction there as readily as upon a straight rail, that circumstance, in connection with the description of the jolt and all the evidence, leads the court to the conclusion that negligence in operating the car, for which the carrier is responsible, has not been proved.

" 9. One further question should be decided. The plaintiff contends, and introduces medical evidence of good quality to prove, that the displacement of the womb was caused by the jolt. The defendant contends, and introduces medical evidence of good quality, that this condition of the plaintiff was not caused by the jolt. The court rules as matter of law that where a passenger, in an action against the carrier, relies upon a personal injury as the result of a jolt, it is not enough to prove a jolt

from which injury resulted in fact, even though the jolt can be described as unusual or extraordinary, but it is necessary to prove that the jolt was such that it would have caused, or was sufficient to cause, actionable injury to a passenger in normal health in the same situation. In this case the court believes and finds as a fact that the plaintiff at the time of the accident was not in normal health. Some time before she had a breakdown, accompanied by indefinite or ambiguous symptoms, which put her physician on inquiry and search for an organic cause. The court finds as a fact, upon all the evidence, that at the time of and before the accident the plaintiff already had displacement of the womb, or that the organ was in such a condition of predisposition to displacement that the jolt caused an injury to her which it would not have caused to a passenger in normal condition, seated as she was, and subjected to the same jolt. There was, in fact, no substantial injury to the plaintiff except the injury to the uterus.

"10. Upon all the evidence the court finds for the defendant.

"11. The plaintiff's requests for rulings are all refused. Although framed with care, they are based throughout, either expressly or by implication, upon one or both of two propositions which seem to the court to be unsound, viz., first, that a jolt, or an unusual jolt or jounce, with an injury to a passenger, raises a presumption of law that the carrier is negligent, and puts the burden on the carrier to clear himself affirmatively by evidence; secondly, that the carrier is responsible to a passenger for injury resulting from a jolt, without regard to whether the passenger was or was not a person in normal bodily health.

"The rulings above given, and this refusal to grant the rulings requested, seem to the court to be sufficient to protect the plaintiff's rights."

In the second case the judge on the same day filed the following "findings of fact and rulings."

"1. The court finds for the defendant.

"2. The findings of fact and rulings filed and made in the case of Clara E. Webber _v._ The Old Colony St. Ry. Co., which was tried with this case, may be considered as filed and made in this case, so far as the same are applicable."

In each of the cases the plaintiff alleged exceptions.

The cases were submitted on briefs.

*R. W. Nutter & C. C. King*, for the plaintiffs.

*Asa P. French & J. S. Allen, Jr.*, for the defendant.

BRALEY, J.   The judge before whom these cases were tried without a jury having made certain findings of fact on which he ruled as matter of law, that the plaintiffs could not recover, they seek to have the findings set aside with the exception of those numbered two, three and four, and the rulings reversed.

It may be, as the plaintiffs contend, that by refined yet clear discriminations a substantial cause of action which they believed had been established by the evidence as stated in the first four findings was overthrown.   But the adverse conclusion, that upon all the evidence the jolt which caused the forward part of the car during the transit to rise up on one side, lifting Mrs. Webber from her seat, and causing her to fall back with " a hard thump," was not attributable to a defective condition of the car, or of the roadbed and track, or to any negligence in operating the car, not having been unwarranted, cannot be set aside.   It is familiar law, that the weight of testimony and the credibility of witnesses are not reviewable on exceptions.

The plaintiffs presented twelve requests for rulings which were refused.   It is manifest that the first two were properly denied, and while the twelfth relating to the measure of damages became immaterial under the eighth finding that no liability of the defendant had been proved, the remaining requests, except the eleventh, directed the attention of the judge to the rule, that the plaintiffs' evidence, which the findings show the judge believed, was sufficient proof of its liability.   If the defendant had offered no evidence the requests would have been applicable, but evidently upon the testimony of its motorman and conductor, as stated in the fifth finding, the judge reached the conclusion as to the cause of the accident, which is set forth in the seventh finding.   The determination of facts is, however, interwoven in the seventh and eighth findings with the important ruling found in the sixth to which the plaintiffs excepted.   The ruling if it rested only on the first four findings might be subject to the plaintiffs' criticism, that it went beyond the evidence.   A jolt even if the car is not derailed, but which was sufficient to cause a passenger to pass through Mrs. Webber's experience is not an

ordinary incident of travel. *Work* v. *Boston Elevated Railway,* 207 Mass. 447. *Nolan* v. *Newton Street Railway,* 206 Mass. 384, 388. And its unexplained occurrence is presumptive proof of the carrier's negligence. *Egan* v. *Old. Colony Street Railway,* 195 Mass. 159, 161. But where as in the case at bar the defendant introduces evidence not perhaps to account for the accident, but to show that it had not been negligent, the plaintiffs still had the burden of proof, which the judge finally decided had not been sustained. *Carroll* v. *Boston Elevated Railway,* 200 Mass. 527, 534–536, and cases cited.

The ruling made in the ninth paragraph, that "as matter of law . . . where a passenger, in an action against the carrier, relies upon a personal injury as the result of a jolt, it is not enough to prove a jolt from which injury resulted in fact, even though the jolt can be described as unusual or extraordinary, but it is necessary to prove that the jolt was such that it would have caused, or was sufficient to cause, actionable injury to a passenger in normal health in the same situation" was incorrect, and the plaintiffs' eleventh request in substance should have been given. The defendant was bound to exercise due care in the transportation of those who had been accepted as passengers, and if she was found to have been suffering from physical conditions making her more susceptible to the particular form of injury, shown by the evidence, this fact did not deprive her of all damages caused by the fall. *Coleman* v. *New York & New Haven Railroad,* 106 Mass. 160. *Derry* v. *Flitner,* 118 Mass. 131. *Turner* v. *Boston & Maine Railroad,* 158 Mass. 261, 266. *Spade* v. *Lynn & Boston Railroad,* 172 Mass. 488, 491. *Sullivan* v. *Marin,* 175 Mass. 422. *Steverman* v. *Boston Elevated Railway,* 205 Mass. 508, 513. *Stynes* v. *Boston Elevated Railway,* 206 Mass. 75. *Pearson* v. *Duane,* 4 Wall. 605. *Hannibal Railroad* v. *Swift,* 12 Wall. 262. 13 Cyc. 31, and cases cited in n. 78. See also *Connors* v. *Cunard Steamship Co.* 204 Mass. 310.

But the plaintiffs were not harmed by this ruling as the previous findings and rulings were decisive of their right to recover. *American Malting Co.* v. *Souther Brewing Co.* 194 Mass. 89, 97.

*Exceptions overruled.*