PERCY PARKER *vs.* AMERICAN WOOLEN COMPANY.

Middlesex.    January 21, 1913. — June 3, 1913.

Present: RUGG, C. J., MORTON, LORING, & SHELDON, JJ.

*Watercourse. Equity Pleading and Practice*, Appeal, Recommittal to master. *Equity Jurisdiction*, To enforce riparian rights, Damages. *Damages*, In equity.

In a suit in equity by an owner of land bordering on a stream against an upper riparian owner to enjoin the defendant from polluting the stream and for damages, a master to whom the case was referred found that the defendant had polluted the stream, and an interlocutory decree was made confirming the report and enjoining the defendant as prayed for. On an appeal by the defendant from such decree, this court ordered a decree for the plaintiff and gave him leave to move for a recommittal of the case to the master for an assessment of damages. *Held*, that the only questions that were open upon such recommittal were questions relating to damages, and that the defendant should not be permitted to introduce evidence to show that other persons besides himself caused the pollution complained of.

In a suit in equity by an owner of property on a stream to enjoin pollution of the stream and for damages, the plaintiff may recover not only for diminution in the rental value of his property during the time since the pollution began, but also for depreciation in the market value of the property, and for the cost of cleaning out his mill pond contaminated by the defendant's pollution, if he shows that he has suffered damages in those particulars because of the defendant's acts.

Where, in a suit in equity by a lower against an upper owner of land on a watercourse, it appears that certain damages were caused to the plaintiff by reason of pollution of the stream by the defendant, and that the water, in the condition in which it was when it reached the defendant and before he polluted it, would not have harmed the plaintiff, the plaintiff is entitled to full compensation for all the damage caused by the defendant's acts irrespective of the fact that, if the water when it came to the defendant had been purer, the pollution caused by the defendant would have been less injurious to the plaintiff.

Where, in a suit in equity by a lower against an upper owner of land on a watercourse, in which the plaintiff seeks damages, it appears that the defendant has polluted the stream without right, and the plaintiff claims as one element of his damages diminution in the rental value of his premises, and it also appears that the use which the plaintiff makes of the stream also pollutes it but that he has a prescriptive right so to use it, a request by the defendant for a ruling that the plaintiff, in computing the rental value of his property, is not entitled to include any profit "due to his own illegal pollution of the stream," is inapplicable and should not be granted.

BILL IN EQUITY, filed in the Supreme Judicial Court on April 11, 1902, by the owner of property on Beaver Brook in the town

of Dracut, to enjoin the defendant, an upper riparian owner, from polluting that stream, and for damages.

The case was referred to Charles P. Greenough, Esquire, as master. An interlocutory decree was made by *Morton,* J., overruling exceptions to the master's report and confirming the report. On an appeal by the defendant, a decree for the plaintiff was ordered by this court, in a decision reported in 195 Mass. 591, and the plaintiff was given leave to move, if he so desired, that the case be recommitted to the master for the assessment of damages. Such a motion was made by the plaintiff and was allowed, and the report was recommitted.

Material portions of the master's second report were as follows:

"I find that from evidence introduced at the later hearings before me which tended to show that the water since 1902 above the defendant's mill had been contaminated by sewage discharged into the brook, — principally at the town of Derry some fifteen miles above the mill, — that the water just above the defendant's mill was not fit for drinking or domestic purposes; and if material, I find that after the year 1902 and until November, 1907, the water at the defendant's mill and after it had reached the plaintiff's mill, was not, in either locality, fit for drinking or domestic use. As no claim, however, has been made by the plaintiff, nor any evidence introduced by him as tending to show damages for the pollution of the water as drinking water or for domestic use, I have not considered that element of damage in my assessment of damages, nor this evidence material to the issues.

"I further find that the defendant purchased its mill in April, 1899, and operated it continually until the injunction was granted, November 1, 1907; and that from the date of the filing of the master's first report, namely, January 16, 1905, until November 1, 1907, the defendant still continued to discharge into Beaver Brook largely increased amounts of polluting substances, similar to those heretofore described, which rendered the water of the brook at the plaintiff's mill unfit for any form of manufacturing which required good clean water.

"I rule as a matter of law that the difference in rental value of the paper mill property, with and without the pollution of the water by the defendant, is the proper measure of damages.

"The plaintiff claims damages for injury to his premises from April, 1899, to November 1, 1907; and, in particular, for the loss of rent or injury to its rental value during that time, except for the time from February 26, 1900, to September, 1900, when the paper mill was closed on account of a freshet in the brook, which materially injured and necessitated repairs to his paper mill plant."

After detailed findings of fact which formed the basis of the findings as to diminution of the rental value of the premises, as summarized below, the report continued as follows:

"I find further that there was an accumulation of deposits in the mill pond of the paper mill, and in the brook for some distance above the mill caused by the discharge of the various deleterious substances heretofore set forth into the brook from the defendant's mill, and that the cost of cleaning out the mill pond and brook would be the sum of $2,000; and I find that the defendant should pay the plaintiff that sum with interest thereon as further damages, at six per cent from November, 1907, to June 24, 1911, amounting to the sum of $440.

"I further find that no deduction from these sums should be made for the cost of filtration of the water issuing from the paper mill into the stream below; and I further find that if the evidence introduced on this subject is considered material, that the plaintiff has acquired the right by prescription to pollute the stream by unopposed use of over twenty-one years by himself and his predecessors in title.

"I also find that the piggery on Beaver Brook did not at any time substantially or materially contribute to the pollution of the brook during the period considered, and that the rendering plant above the mill ceased to do business in 1902, and did not contribute substantially or materially to the pollution of the brook before 1902.

"I find also that the plaintiff did not use proper care and good judgment in dismantling the paper mill and disposing of the machinery in 1902; and therefore find no damages due him from the defendant on this account; and that if he had not dismantled the mill he would, in my opinion, have been entitled to claim damages for the cost of the necessary care and upkeep of the machinery while the mill was unoccupied, until the date of the injunction;

and that the cost of such care and upkeep of the premises would be $1,500 per year.

"I find also that the plaintiff is entitled to damages for the depreciation in the market value of this property, caused by the continued pollution of the water of the brook by the defendant from 1899 to 1907; and I find this amount to be the sum of $2,000.

"I find, therefore, that the plaintiff is entitled to recover as damages from the defendant the following amounts, viz.:

| | | |
|---|---|---:|
| "(1) | Diminution in rental value from 1899–1900, | $1,200.00 |
| | Interest on same to June 24, 1911, | 762.00 |
| (2) | Diminution in rental value from 1900–1902, | 3,850.00 |
| | Interest on same to June 24, 1911, | 2,040.00 |
| (3) | Diminution in rental value from 1902–1907, | 8,540.00 |
| | Interest on same to June 24, 1911, | 1,770.00 |
| (4) | Cost of clearing out mill pond, | 2,000.00 |
| | Interest on same to June 24, 1911, | 440.00 |
| (5) | Depreciation in value of property, | 2,000.00 |
| | Total, | $22,602.00" |

The sixth and seventh rulings, which the defendant asked the master to make and which are mentioned in the opinion, were as follows:

"6. That if suit is brought against one defendant for damage caused by the pollution of a stream when several persons acting independently have contributed to the pollution of the stream, the damage for which the defendant is responsible must be distinguished from that caused by others by the best proof the nature of the case affords and his liability determined accordingly.

"7. That it is competent for the defendant to show, in mitigation of damages, that others were contributing to the pollution of Beaver Brook during the period of time for which the plaintiff claims damages in this suit."

Exceptions to the report were overruled and the report was confirmed by a decree made by *Morton*, J., who filed a memorandum of his decision containing the following, among other rulings:

"The former findings of the master and the rulings of the single justice and the opinion of the full court in 195 Mass. 591, must be taken, it seems to me, to have settled that the stream has been

polluted so as to be unfit at the plaintiff's dam for any of the manufacturing purposes which require clean water, and that that pollution has been caused by the defendant.   This renders, I think, incompetent and immaterial evidence that was introduced *de bene* and otherwise in respect to the pollution of the stream above the defendant's dam and as to the extent to which the defendant had contributed to its pollution at the plaintiff's dam. . . .

"If I am in error in this, then I think that the fact, if it is a fact, that others may have contributed to the pollution cannot, under the circumstances of this case, avail the defendant.   If the amount of pollution caused by the defendant and the damage resulting to the plaintiff therefrom could be separated from that caused by others, then justice would require that the defendant should be held liable only for the damage caused by it.   But no attempt has been made to separate the damage done by the defendant from that caused by others and manifestly it would be impossible to do so.   Under such circumstances the defendant is liable for all of the damage which the plaintiff has sustained and will sustain by reason of the pollution by the defendant of the stream. . . . On one or the other of these two grounds it seems plain to me that evidence of pollution by others was and is incompetent and immaterial. . . .

"The defendant is liable for all damages sustained by the plaintiff which are the direct and proximate result of its pollution of the stream.   In estimating those damages the nature of the property and the uses to which it has been and is adapted are to be considered.   The property is a manufacturing property and the damages are to be estimated according to the injury done to it as such by the pollution of the stream.   The plaintiff is entitled to have the damages measured by the most profitable use to which the property could be put for manufacturing purposes if the water in the stream had not been polluted by the defendant and was, in the words of the master, "good clean water."   If as a result of the pollution the plaintiff has suffered a loss, as the master finds that he has, in the rental value of the property the defendant is, I think, liable therefor.   I think further, that if the property has depreciated in market value in consequence of the pollution of the stream, as the master finds that it has, the de-

fendant is liable for that also. . . . I do not myself see why the plaintiff may not recover not only for loss of rents, but also for depreciation in the market value of the property. I also think that if the defendant has discharged foreign substances into the stream which have caused accumulations in the pond at the plaintiff's mill and in the brook immediately above it, the defendant should pay the cost of cleaning out the pond and brook. I do not understand the defendant to contend that the allowance by the master of interest by way of further damages is wrong. These are the elements which the master has taken into account in the assessment of damages and it seems to me that they are all proper elements of damage."

A final decree was entered enjoining the acts complained of in the bill and awarding damages to the plaintiff in the sum of $23,995.79, and costs.

Both parties appealed, the plaintiff complaining only of the failure of the master to include in the damages the cost of the care and upkeep of the mill while unoccupied and before dismantled, which the master found was at the rate of $1,500 a year.

*F. N. Wier,* for the plaintiff.

*S. L. Whipple & A. Lincoln,* for the defendant.

SHELDON, J. When this case came on for hearing upon the master's second report and the exceptions thereto, the single justice ruled that it must be taken to have been settled by the former proceedings that the stream had been polluted so as to be unfit at the plaintiff's dam for any manufacturing purposes which required clean water, and that the pollution had been caused by the defendant. This was correct. It was the very point which was passed upon and decided when the case first came before us. *Parker* v. *American Woolen Co.* 195 Mass. 591. After that decision, the case was recommitted to the master for the assessment of the plaintiff's damages, and it is only matters bearing upon that question that now are open.

Many of the arguments that have been made for the defendant are upon questions of fact that were raised before the master. These no doubt were addressed to the master, and were given proper weight by him. Upon examination of the evidence reported, we do not find that any of his findings of fact that now are objected to were plainly wrong. Indeed they seem to have been

well supported by the evidence before him. Accordingly we must accept them.

It could not have been ruled that the plaintiff's damages were to be measured solely by the diminution in the amount of the rental value of his premises, whether we take this to mean the loss of the rents and profits thereof or the diminution in the value of the use of his property during the period in question, due to the pollution caused by the defendant. These were elements to be considered in determining the amount of his damages, but they were not necessarily the sole matters to be looked at. One of the results of the defendant's wrongful acts, it has been found, was a depreciation of the value of the plaintiff's property. He would not obtain full justice unless he were compensated for this. His mill pond must be cleaned out, and the injurious deposits therein must be removed. Plainly he should recover the necessary expense of doing this. He is entitled to full compensation for all the injury done to him. So far as this included rental value, it must be the rental value of his premises in their condition at the time, but without the existing pollution of the water. Business profits have not been allowed to him. See as to these questions *White* v. *Moseley,* 8 Pick. 356, 359; *Bradley* v. *Rea,* 14 Allen, 20; *Johnson* v. *Holyoke,* 105 Mass. 80; *Horton* v. *Cooley,* 135 Mass. 589; *French* v. *Connecticut River Lumber Co.* 145 Mass. 261; *Pye* v. *Faxon,* 156 Mass. 471, 475; *Allen* v. *Boston,* 159 Mass. 324, 337; *Peak* v. *Frost,* 162 Mass. 298; *O'Brien* v. *Worcester,* 172 Mass. 348; *Atwood* v. *Boston Forwarding & Transfer Co.* 185 Mass. 557; *Weston* v. *Boston & Maine Railroad,* 190 Mass. 298; *Berry* v. *Ingalls,* 199 Mass. 77; *Phelps* v. *Berkshire Street Railway,* 210 Mass. 49; *Moore Spinning Co.* v. *Boston Ice Co.* 210 Mass. 364, 370; *Finley* v. *Hershey,* 41 Iowa, 389.

Doubtless the defendant is not to be held for damages resulting merely from the independent acts of third persons. But it chose to discharge noxious substances into the stream and thereby so to pollute the water as to cause loss to the plaintiff. The water, as has been found, was already somewhat contaminated from other causes, so that it was not fit for drinking or domestic use. But this degree of pollution did not' of itself harm the plaintiff. The fact that under other circumstances, if for example the water as it came to the defendant had been pure, the pollution caused

by the defendant might have been less injurious to the plaintiff, is not material. In this respect, the case is like that presented when an injury has been done by a defendant, either purposely or negligently, to a plaintiff, which would not appreciably have harmed a well and normally strong man but has more seriously affected the plaintiff by reason of some bodily weakness or infirmity peculiar to himself, as in *Coleman* v. *New York & New Haven Railroad,* 106 Mass. 160, 178. The wrongdoer takes the risk of the consequences that may result from his injurious act. See the cases collected in *Webber* v. *Old Colony Street Railway,* 210 Mass. 432, 442.

Doubtless the defendant and the third party who also contaminated the stream were not joint wrongdoers. And it is not necessary for us to determine whether the tortious acts of such third persons were independent acts within the strict meaning of that word, or whether, if the damage done to the plaintiff was due in part to the acts of the third parties, the defendant could yet be held liable for the whole damage on the ground that the torts of all of them co-operated in bringing about the one indivisible result of which the plaintiff complains, and so that all the parties must be treated as if they had been joint wrongdoers in intention as well as in the result brought about by their combined acts, according to the rule which has been applied in cases of personal injuries. *D'Almeida* v. *Boston & Maine Railroad,* 209 Mass. 81, 87. The rule that in a case like the one here presented separate wrongdoers acting independently of each other are liable only for their individual acts has been declared. *Mansfield* v. *Bristor,* 76 Ohio St. 270, and 118 Am. St. Rep. 852, and cases in note on p. 873. *Pulaski Anthracite Coal Co.* v. *Gibboney Sand Bar Co.* 110 Va. 444, and *Gibboney Sand Bar Co.* v. *Pulaski Anthracite Coal Co.* 24 L. R. A. (N. S.) 1185. The real distinction was perhaps taken in *Nitro-Phosphate & Odam's Manure Co.* v. *London & St. Katharine's Docks Co.* 9 Ch. D. 503, 527. On the findings of the master taken together, it sufficiently appears, as we have seen, that the pollution of the stream which caused the plaintiff's damage was due to the acts of the defendant and not to those of other parties. This is stated in the master's second report in his finding that the "pollution of the water and loss in rental value, was caused by acts of the defendant company." And again he

found "that the piggery on Beaver Brook did not at any time substantially or materially contribute to the pollution of the brook during the period considered, and that the rendering plant above the mill ceased to do business in 1902, and did not contribute substantially or materially to the pollution of the brook before 1902." By reason of these findings the sixth and seventh requests for rulings which the defendant asked the master to give were inapplicable to the case. The rulings made by the single justice upon this question have done no injury to the defendant, and afford to it no ground of complaint.

The master's finding that the plaintiff had a prescriptive right to pollute the water at his paper mill made it unnecessary to give the ruling requested by the defendant, that in computing the rental value of his property the plaintiff was not entitled to include any profit due to his own illegal pollution of the stream. No such illegal pollution by the plaintiff was found. And the defendant's claim that it had put in as strong evidence of its own prescriptive right as that upon which this finding in favor of the plaintiff was made, if we assume that this position is now open to it, merely illustrates the rule that findings made by a master upon conflicting evidence are not lightly to be overthrown. The evidence in support of the two contentions did not seem to him to be equally strong, and we cannot reverse his conclusion.

On the master's findings, the plaintiff's claim for additional damages was properly disallowed.

It is unnecessary to consider the exceptions in detail. As we discover no reason for disagreeing with the findings of the master that have been contested before us, and no error of law in dealing therewith, the decree entered by the single justice must be affirmed; and it is.

*So ordered.*