ARTHUR BIRCH *vs.* BOSTON AND MAINE RAILROAD.

Middlesex.     January 14, 1927. — May 20, 1927.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Water. Equity Jurisdiction,* To enjoin diversion of water upon plaintiff's land. *Equity Pleading and Practice,* Master: findings of fact. *Damages,* From diversion of water upon plaintiff's land. *Evidence,* Presumptions and burden of proof. *Joint Tortfeasor.*

In a suit in equity by the proprietor of machinery works against a railroad corporation seeking, with other relief, damages caused by the unlawful maintenance of a ditch by the defendant beside property of the plaintiff, a master found that eleven years before the suit was brought the plaintiff, for an addition to his factory, had built foundation walls and piers which in places had crumbled away and would have to be rebuilt to some extent to be usable; that the structures had value; and that the fact that the plaintiff had not seen fit to use them did not excuse the defendant from causing damage to them. In determining such damage the master found that, although it was due in part to exposure to the weather and to neglect, much of it was occasioned by the undermining and crumbling away caused by water which overflowed from the ditch into the enclosure, and that the amount of damage caused by what the defendant did or omitted to do did not admit of exact calculation; but he estimated it to be $500. *Held,* that an exception to the method adopted by the master in determining damages could not be sustained.

The fact, that damages may not be exactly determinable, does not preclude the court from reaching a decision as to their amount if it can be based upon "reasonable inferences from the facts and circumstances in evidence."

The mere facts, appearing in the suit above described, that changes in grade of streets of the town where the plaintiff's land and the ditch in question were situated and the subsequent laying out of new streets must have increased materially the flow of surface water into the ditch, and also the service required of it, did not prevent the plaintiff from recovering from the defendant, which maintained the ditch, his whole damage caused by the overflow of surface water from it.

*It was stated* that, in the suit above described, this court was not called upon to decide whether, in other circumstances, independent tortfeasors whose acts contributed to cause one injury could successfully contend that each was liable only for the damage which it caused, and that it should be relieved from the payment of damages unless the amount of its separate liability was determined.

BILL IN EQUITY, filed in the Superior Court on July 20, 1922, by the proprietor of the Arlington Machine Works, described in the opinion.

In the Superior Court, the suit was referred to a master. Material facts found by the master are described in the opinion. An interlocutory decree overruling exceptions by the defendant to the master's report and confirming the report was entered by order of *Brown*, J., and a final decree was entered by order of *Freeman*, J. The final decree directed the defendant to "construct or maintain the sluices, drains or conduits for the care of surface water within its location at or near the premises of the plaintiff . . . in such manner or to employ any other means or methods as to prevent the overflowing of water from the railroad location of the defendant onto or upon the lands of the plaintiff"; perpetually enjoined and restrained the defendant from overflowing the lands of the plaintiff or emptying water from its location into the lands of the plaintiff; and awarded the plaintiff damages in the sum of $750. The defendant appealed from the final decree.

The case was submitted on briefs.

*J. C. Warner*, for the defendant.

*P. A. Hendrick*, for the plaintiff.

SANDERSON, J. The plaintiff brings this bill to compel the defendant to discontinue or make changes in a drain constructed by it to carry off water; and for the assessment of damages. The master stated that the controversy related to the overflow of water on to the plaintiff's land from

a ditch maintained by the defendant along the northerly side of its location, and found the amount of damage resulting therefrom because of the filling up of his log pond with silt and debris, the injury from water to belts in the pit of his factory building, and injury to certain foundation walls and piers. The only exceptions to the report were to the finding in relation to these foundation walls and piers and to the inferences and conclusions of law adopted by the master in support of that finding. The court, by its interlocutory decree, overruled the exceptions and confirmed the report. Thereafter the final decree was entered granting injunctive relief and assessing damages in the sum found by the master.

The only appeal was from the final decree, and the defendant has not argued that the part of that decree which relates to the injunctive relief is open to objection. It contends that the plaintiff cannot recover for injury to his masonry structures, because they were abandoned as units of any building scheme and therefore had only nominal value, and because he did not repair the walls, as a reasonably prudent man should have done. It also contends that upon the facts found by the master no damage can be assessed against the defendant for the reason that (1) the damage is caused in part by the natural flow of water from a bog near the plaintiff's buildings into excavations dug by him; and (2) that the damage due to overflow from the ditch is caused, in part at least, by the extra burden put upon it by the construction of new streets and other things done in connection therewith by the town of Arlington.

The plaintiff's land is bounded on the south by the railroad location for approximately three hundred and fifty feet. The embankment on which the rails are laid is higher than the land of the plaintiff and, in order to prevent the wash of surface water upon its road bed, the defendant constructed and maintains an open drain, on the northerly border of its location, which empties into a culvert at or about the southeasterly corner of the plaintiff's premises. An important feature of the plaintiff's business is the manufacture of wooden rollers. For the preservation of the large and heavy maple logs from which they are made, it is necessary

that they be kept immersed in water, and for this purpose the plaintiff constructed an artificial pond with sides of masonry at the southeasterly corner of his land. At times, the drain has overflowed, carrying silt and cinders from the railroad embankment into this log pond, thereby decreasing its depth and making it necessary for the plaintiff to remove the logs, drain and dig out the pond. On one occasion some of the logs floated out and had to be put back at considerable expense.

On the westerly side of this pond and adjacent to the railroad property, the plaintiff, in 1911, built foundation walls and piers for an addition to his factory. They have, in places, crumbled away and would have to be rebuilt to some extent to be usable. The master found that the structures have value, and that the fact that the plaintiff has not seen fit to use them does not excuse the defendant for causing damage to them. In determining this damage the master found that although it was due, in part, to exposure to the weather and to neglect, much of it was occasioned by the undermining and crumbling away caused by water which overflowed from the ditch into the enclosure; that the amount of damage caused by what the defendant did or omitted to do does not admit of exact calculation, but he estimated it to be $500.

If it be assumed that the objection, urged by the defendant, to the method adopted by the master in determining these damages is open on the record, it cannot be sustained. If the plaintiff has a cause of action, he does not lose his right to have damages assessed for injury to his property because he has neglected it or has not used it. *C. W. Hunt Co.* v. *Boston Elevated Railway*, 199 Mass. 220, 235, 237. The evidence is not reported, and it does not appear that the master was not justified in reaching his conclusion. We must assume that his decision, fixing the amount of these damages, was a finding of fact upon the evidence. The fact that damages may not be exactly determinable, does not preclude the court from reaching a decision as to their amount if it can be based upon "reasonable inferences from the facts and circumstances in evidence." *Burnham* v. *Dowd*, 217

Mass. 351, 360.  The master found that ever since the
elimination of the grade crossing and the building of the
Park Avenue bridge in 1898, there probably has been an
overflow on to the plaintiff's land, but that until the con-
struction of the masonry piers and the new log pond in 1911,
this overflow was of no great importance; it was first com-
plained of as a detriment about a month after the founda-
tions were finished.  The defendant from time to time has
dug out the trench when it had become partly filled with
silt and failed to carry off all of the water.  Since June,
1913, the overflow on to the plaintiff's land has occurred
after heavy rains.

The master found that the changes in the grade of streets
in 1898, and the laying out of new ones in later years, must
have increased materially the flow of surface water into the
trench, and also the service required of it, and that it seems
impossible accurately to gauge this increased burden.  There
was a provision in the order for change of grade of Park
Avenue in 1898 that "All drains affected by the changes
hereby ordered shall be properly taken care of."  The drains
on the northerly side of the railroad were provided for by an
eighteen inch pipe from which the water went into the de-
fendant's ditch at a considerable distance westerly from the
plaintiff's land and thence flowed by the property of the
plaintiff to the culvert under the railroad.  This pipe was
sufficient to take care of the volume of water that came to it,
even in times of freshet.  Upon the findings, the causes of
the overflow are: the inadequate means of carrying off the
water after it comes into the trench, which is too small and
is overgrown with grass and weeds; the low bank where it
makes the abrupt turn under the tracks; and the fact that
the outlet to the culvert is smaller than its inlet.  The master
found that the obstructions to the ditch hold the water back
so that it overflows all along the railroad location.

"If a private landowner collects surface water into a
definite artificial channel, and discharges it upon his neigh-
bor's land, he is liable . . . .  And when the defendant would
be liable for a direct discharge, we apprehend that he would
be liable also if the water should be deflected upon the plain-

tiff's land by an obstacle to its direct course, in case the defendant either set up that obstacle, or negligently allowed it to remain when he ought to remove it. We think, also, that it would not matter that some water would reach the obstacle if the defendant's drain were not there, provided the drain brings down more than otherwise would come, and causes the flooding of the plaintiff's land by this excess." *Bates* v. *Westborough*, 151 Mass. 174, 181.

The cause of action is based upon the collecting of water in a trench and conducting it upon land of the plaintiff where it would not naturally have gone. Even if the overflow were caused in part by surface water from land not belonging to the defendant, the defendant still would be liable because it does not appear upon this record, and it is doubtful if it could be made to appear, that the water would come upon the land in question at the same places and in the same quantities if the trench had not been made to conduct it. *Curtis* v. *Eastern Railroad*, 98 Mass. 428.

The plaintiff may recover the whole of his damages caused by the overflow of surface water from the artificial trench, from the party who maintains it to carry off that water; and the railroad company cannot defend on the ground that the municipality has collected surface water in catch basins and a conduit which finds its way into the defendant's trench. We are not called upon to decide whether, under other circumstances, independent tortfeasors whose acts contribute to cause one injury can successfully contend that each is liable only for the damage which it caused, and that it can be relieved from the payment of damages unless the amount of its separate liability is determined. *Corey* v. *Havener*, 182 Mass. 250, 252. See *D'Almeida* v. *Boston & Maine Railroad*, 209 Mass. 81, 87; *Parker* v. *American Woolen Co.* 215 Mass. 176, 183; *Nitro-Phosphate & Odam's Chemical Manure Co.* v. *London & St. Katharine Docks Co.* 9 Ch. D. 503, 527.

All questions argued by the defendant have been considered and no reversible error is found.

*Decree affirmed with costs.*