MARY E. PARRISH, a feme sole, operating and doing business under the name of VICTORIA HOSPITAL, *Plaintiff in Error*, vs. OSCAR CLARK and MARY LEE CLARK, by her husband and next friend, OSCAR CLARK, *Defendant in Error*.

145 So. 848.

Opinion filed January 9, 1933.

Petition for rehearing denied February 6, 1933.

*Blackwell & Gray,* for Plaintiff in Error;
*Dunbar H. Johnson, Jr.,* for Defendants in Error.

PER CURIAM.—This is a writ of error taken to a judgment at law awarding plaintiff below damages for injuries alleged to have been negligently inflicted upon her in defendant's hospital.

The declaration sounded both in tort and contract, but the nature of the action is largely immaterial on the question of whether or not the judgment should be reversed on the sole ground that liability is not shown by the evidence.

The gist of the cause of action was the asserted right to recover damages for personal injuries from the operator and proprietor of the Victoria Hospital at Miami, the allegations of the complaint being to the general effect that the injuries sustained were caused by positive acts of negligence of a servant and employee of the hospital, in that said servant and employee, a nurse in the institution, improperly, negligently and carelessly undertook to administer and did administer to Mrs. Mary Lee Clark, after she had been operated on for appendicitis, a certain injection designated in the nomenclature of the medical profession as a "hypodermoclysis."

The evidence offered in support of the complaint was substantial in character. It shows that the defendant, Mary E. Parrish, was operating the Victoria Hospital; that

with respect to plaintiff in error, if not with respect to the public generally, that she had assumed the status of one who undertook, for a reasonable compensation, to properly care for and nurse Mrs. Clark during the course of an operation and convalescence for appendicitis; that Mrs. Clark entered defendant's hospital for the purpose of such operation and that she was at the time, with the exception of having an attack of appendicitis, a strong, robust, healthy young married woman of twenty-three years of age; that as a result of the handling and care she received in the hospital while under the care of one of the regularly employed nurses of the defendant hospital owner, that Mrs. Clark suffered personal injuries from an improperly prepared or administered saline solution which was injected into her breasts while she was unconscious and under the nurse's and hospital's care; that as a result plaintiff in the court below sustained personal injuries consisting of the destruction of the tissues of her breast by burning and breaking down of same, from which she suffered intense and excruciating pain and was rendered permanently impaired in her health and condition of her body.

The evidence further shows that all the personal injuries that plaintiff suffered, were directly and proximately attributable to the effects of the "hypodermoclysis" which was actually administered to her by a Mrs. Leola Phillips Smith, a trained nurse who was at the time in the service and employ of the defendant, and whose duty it was to see after and care for the unconscious patient then under the care of Victoria Hospital, whose proprietor and operator the defendant, Mary E. Parrish, was.

The evidence is also to the effect that the administration of an "hypodermoclysis" requires constant observation and skilled attention on the part of the one giving or administering it, in order to prevent injury to the patient.

This is especially true in cases where such "hypoder-

moclysis'' is administered to a patient who is unconscious from the effects of an anaesthetic administered to her during the course of an operation. For the foregoing reasons the hypodermic needles used in making the saline injection into the body to prevent dehydration in the tissues, are usually handled either by or under the direct supervision, observation and direction of a physician or surgeon.

It appears further that Mrs. Leola Phillips Smith, the Victoria Hospital nurse in charge of the patient involved in this case, undertook to give and did give the ''hypodermoclysis'' herself, and that it was she who personally injected into the breasts of Mrs. Clark, the hypodermic needles with which the particular injection was required to be made.

Whether or not this undertaking by the nurse to do an act which it is contended only the physician himself should have performed, was negligence on her part, or imputable to the hospital which employed her to care for the unconscious patient then in her care, is not necessary to be decided in this case. Plaintiff's recovery does not depend upon a holding by this Court that such an act was negligence either *per se*, or otherwise.

The facts are, that the nurse after beginning the ''hypodermoclysis'' and before it had progressed very far, admits in her testimony, that she noticed that ill effects were being wrought upon Mrs. Clark's breasts by the treatment as she was giving it, and that the tissues were not properly absorbing the solution being injected, and that notwithstanding these signs of danger, she continued making the injection until she had put into the breasts of her unconscious patient about six hundred and fifty CC's of the solution, whereas she noticed the first ill effect of the injections before she had given over fifty CC's of it.

The nurse who did this appeared as a witness and testified for the defendant below, and her own admissions are

all in the record to the effect that after noting signs of danger caused by the treatment she was giving, she did not desist, neither did she call in the doctor in charge or any other doctor to advise her what was wrong or to direct her how to further administer the treatment.

At the time all this happened, Mrs. Smith was in the service of the Victoria Hospital and in the employ of the defendant.

To care for the unconscious Mrs. Clark was admittedly part of her duty,—a duty which she was performing for her principal, the hospital proprietor, who employed her for that purpose, and who was in turn paid by the patient for such service. That duty included within its purview a corollary duty on the part of such nurse not to continue in the giving of a "hypodermoclysis" after it was plainly evident to her that something was wrong with its administration or with its composition, which was adversely affecting the patient.

This corollary duty was breached in that she neither desisted from what she was doing after she admits that she noticed its injurious reaction, nor called in nor attempted to call in a physician to tell her what was wrong and rectify the course of the treatment that was being attempted. For this breach of duty, whether done in good faith or not, and regardless of the competency of the nurse, nor the care used by the hospital in employing her, the hospital is legally liable, because its duty was to properly nurse and care for its unconscious patients and not cause them personal injuries by the continuance of a course of handling which was obviously having an unnatural and deleterious reaction on the person of the patient.

This Court has held that in an action against a hospital for damages for personal injuries claimed solely for alleged actual negligence, the competency of the negligent employee who caused the injury is immaterial to the right to recover

or to the defense of the hospital. Pensacola Sanitarium v. Wilkins, 68 Fla. 447, 67 Sou. Rep. 124.

In such cases the owner and operator of the hospital is liable for the positive negligent infliction of injury on the patient by an employee nurse, regardless of whether or not it used due care in the selection of only competent nurses to attend the patients in its charge, and especially in cases where the inception of the duty of the hospital toward the patient lies in a contract by the hospital to furnish rooms and nursing care to the sick person who suffers such negligent personal injuries. Ward v. St. Vincent's Hospital, 39 App. Div. (N.Y.) 624, 57 N. Y. Sup. 784; Gitzhoffen v. Sisters of Holy Cross Hospital Assn., 32 Utah 46, 88 Pac. 691; Armstrong v. Wesley Hospital, 170 Ill. App. 81. And in cases like this an action may arise for the breach of the contract, or for the positive tort committed by the violation of a duty arising out of the assumption of the contractual relation. Banfield v. Addington, 104 Fla. 661, 140 Sou. Rep. 893.

The right of action on the contract, and the right to sue for the breach of the collateral duty are distinct, the only limitation on a suit for either or both being that the same party cannot be compensated twice over for the same wrong, once for the breach of contract and again for the tort. Flint & Walling Mfg. Co. v. Beckett, 167 Ind. 491, 79 N. E. 503, 12 L. R. A. (N.S.) 924, text 933.

In this case the testimony of the alleged negligent nurse herself, who was called as a defendant's witness, is ample to sustain the verdict of the jury holding that the hospital's duty to the patient had been breached by the infliction of personal injuries on her by the defendant's servant and employee whose duty it was to care for her.

To hold that it is a good defense to the hospital for it to say that it was not liable for the positive negligent acts of its nurse, as testified to by her, merely because it used due

care to employ only a competent trained nurse for the purpose, is to say that a hospital operator is under a less duty to an unconscious patient it is undertaking for hire to care for than the law on this subject warrants.

Neither is it any defense for the hospital to say that because its business is not conducted for gain or profit, although charges are made for rooms and nursing therein, that it is exempt from any and all duties toward the patient except that of using due care in the selection of suitable and competent attendants. The authorities heretofore cited are to the contrary.

In this case the injuries sustained by Mrs. Clark were serious and permanent. Her breasts, an asset of physical perfection and beauty to a woman as well as being a utility for motherhood, have been permanently scarred, defaced and practically destroyed. She has lost forty pounds in weight and is a general invalid. For all of this the jury allowed $2,500.00 damages, a most modest sum, which in and of itself completely refutes any idea that the jury was swayed by prejudice or passion, either in finding a verdict for plaintiff, or in fixing the amount.

Even if the evidence were of such nature that this Court would find a different verdict if it were trying the case here "de novo," that fact alone would not warrant us in setting aside a verdict which has been rendered by a jury, is predicated upon substantial, competent and legal evidence, and has the approval of an able trial judge who saw and heard the witnesses testify and who has refused to disturb it himself by granting a new trial.

The suggested defense that the reaction to plaintiff of the treatment given, was due to an idiosyncracy in her physical makeup, was passed upon by the jury, which found that even if plaintiff was peculiarly subject to being injured by the "hypodermoclysis," that nevertheless the nurse persisted in giving such treatment after she was ap-

prised of its unhealthful reaction. Where a person is injured by the negligence of another, such person is entitled to recover, even though by reason of a previous diseased condition, such person is more susceptible to injury. A woman is not bound to be free from all complications in order to recover for negligent injuries she actually sustains. Miehlke v. Nassau Electric R. Co., 129 App. Div. (N.Y.) 438, 114 N. Y. Sup. 90; Webber v. Old Colony St. R. Co., 210 Mass. 432, 97 N. E. 74.

This Court is committed by a long line of its decisions to the doctrine that the power of the Supreme Court to reverse a judgment solely on the facts ought to be exercised cautiously and with discrimination, and only after careful consideration of the evidence in its most favorable aspect to the party in whose favor the verdict was rendered. Florida East Coast R. Co. v. Thompson, 93 Fla. 30, 111 Sou. Rep. 525.

The test is not what we as members of the appellate court would have decided had we been on the jury, but whether or not the appellate court viewing the case in its most favorable aspect toward the successful litigant, can say that the jury as reasonable men could not have found the verdict that they did and that therefore the verdict is wrong, and that the judgment should accordingly be reversed therefor. Jennings v. Pope, 101 Fla. 1476, 136 Sou. Rep. 471.

The verdict is fully sustained by the evidence and the judgment should be affirmed.

Affirmed.

BUFORD, C.J. AND WHITFIELD, TERRELL AND DAVIS, J.J., concur.

BROWN, J.—There were two separate and distinct verdicts and two separate and distinct judgments rendered in this case, one for $2,500. in favor of Mary Lee Clark and the other for $500. in favor of Oscar Clark. They were sepa-

rately entered on the same day for separate causes of action set forth in one and the same declaration as permitted by the statute. The writ of error is directed to one judgment ''in a certain cause which is in our said Circuit Court before you, between Oscar Clark and Mary Lee Clark, by her husband, next friend, Oscar Clark, as plaintiffs, and Mary E. Parrish, a feme sole, operating and doing business under the name of Victoria Hospital, as defendant.'' It is impossible to say to which of the judgments this writ of error is directed. It is expressly directed to a single judgment, whereas there were two judgments referred to in the writ of error. It seems to me therefore, that this court has never acquired jurisdiction of either judgment and that the writ of error should be dismissed, rather than affirmed.