THE CENTURY INDEMNITY COMPANY *vs.* HENRY B. BLOOM & others.

Suffolk.    October 8, 1952. — December 1, 1952.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Law of the Case. Practice, Civil,* New trial; Requests, rulings and instructions. *Estoppel. Partnership,* By estoppel. *Contract,* What constitutes, Of indemnity.

Principles of law determined by this court in a case became the law of the case governing a subsequent retrial thereof. [510–511]

Evidence that two of three principals on a bond executed by them as doing business under a certain business name were husband and wife and that a surety executing the bond was not aware of that fact justified conclusions that as between the surety and one who had contracted to indemnify the surety respecting the bond there was an "ostensible partnership" among the principals and that the indemnitor was estopped to deny liability to the surety under such contract of indemnity on the ground that husband and wife could not be partners and "if there was no partnership . . . there was no principal in" the bond. [510, 511]

A party was not harmed by the denial of requests for abstractly correct but immaterial rulings. [511]

A sealed instrument of indemnity, signed by the indemnitor only, in which were recitals of consideration to him and provisions whereby he agreed to indemnify the indemnitee "by reason of becoming surety" on "whatever bonds . . . may be executed by the [indemnitee as]

surety on behalf of . . . [certain persons] from time to time, and over an indefinite period of years, until this agreement shall be cancelled in accordance with" a further provision that the indemnitor by written notice to the indemnitee might "terminate" his "liability" but without affecting his obligations respecting bonds already executed by the indemnitee, was not a mere offer requiring seasonable notice of acceptance to be given by the indemnitee to the indemnitor but was a contract binding on the indemnitor immediately without the necessity of such notice. [511–513]

CONTRACT. Writ in the Superior Court dated January 14, 1948.

Following the decision reported in 325 Mass. 52, there was a further hearing by *Smith*, J., without a jury.

In this court the case was submitted on briefs.

*Julius H. Soble*, for the defendant David Bloom.

*David Gorfinkle*, for the plaintiff.

WILKINS, J. Following the earlier decision in this case, 325 Mass. 52, the declaration was amended, and there was another trial limited to the liability of the defendant David Bloom (hereinafter called the defendant). The judge found for the plaintiff on the amended first count. The defendant's exceptions are to the denial of certain requests for rulings.

The amended first count alleges that on November 13, 1939, the defendants Henry B. Bloom, David Bloom, the late Louis Bloom, and the now defunct Leighton & La Pierre Co., a corporation (hereinafter called the corporation), executed with the plaintiff a general contract of indemnity, a copy of which is annexed; that after the corporation ceased to do business, the defendants Henry B. Bloom, Muriel Cohen, and Sylvia Bloom formed a partnership, and carried on business under the name of Leighton & La Pierre, Dunhill Co., Leighton & La Pierre Co., and Leighton-La Pierre; that the partnership as principal and the plaintiff as surety issued two indemnity bonds upon which the plaintiff has been obliged to make payments for which recovery is sought; that the first bond, executed on or about May 14, 1946, to New York, New Haven and Hartford Railroad Company for freight charges, resulted in a payment to the

obligee by the plaintiff of $700; and that the second bond, executed on or about October 31, 1946, to the Commonwealth of Massachusetts for the payment of beverage excise taxes resulted in a payment to the obligee by the plaintiff of $1,677.07.

At the trial the proof was much the same as at the earlier one. There was evidence of the execution of the general contract of indemnity, the corporation ceasing to do business, the formation of the partnership, the execution by the plaintiff as surety of the two bonds, and the payments of losses, as alleged. · With respect to the first bond, there was evidence that "Leighton-La Pierre appeared as principal." As to the second bond there was evidence that "the defendants Henry B. Bloom and Sylvia Bloom, together with Muriel Cohen, doing business as Leighton and La Pierre, doing business as Dunhill Co., and doing business as Leighton & La Pierre Co., executed" as principals. The only material new evidence was that Henry B. Bloom and Sylvia Bloom were husband and wife; and that the plaintiff's representative who executed the bonds was unaware of that fact.

1. The defendant's third request was: "The execution of the bond of May 14, 1946, wherein Leighton-La Pierre appeared as principal, the New York, New Haven and Hartford Railroad as obligee and the plaintiff as surety was not such a bond the loss against which the defendant David Bloom agreed to indemnify the plaintiff under the general contract of indemnity of May [*sic*] 13, 1939." The request is obscure. Literally, the "execution of the bond" could not be "a bond." The defendant now briefly argues that there was no evidence as to who signed the bond on behalf of Leighton-La Pierre, and no evidence that any member of the partnership executed it. When the case was here before, it was held that the defendant Henry B. Bloom was liable upon both bonds, and that both bonds fell within the general contract of indemnity (page 56). This request was rightly denied. *Boyd* v. *Taylor*, 207 Mass. 335. *John Hetherington & Sons, Ltd.* v. *William Firth Co.* 212 Mass.

257, 260. *Parker* v. *American Woolen Co.* 215 Mass. 176, 181. *Taylor* v. *Pierce Brothers, Ltd.* 220 Mass. 254, 255. *Spilios* v. *Papps,* 292 Mass. 145, 146. *Cann* v. *Barry,* 298 Mass. 186, 187.

2. The defendant argues that there could be no valid principal on the two bonds because Henry B. Bloom and Sylvia Bloom were husband and wife and could not be partners. The judge ruled that "an ostensible partnership existed as to third persons and that the defendant David Bloom is estopped to deny" liability. This ruling was correct. G. L. (Ter. Ed.) c. 108A, § 16. *Standard Oil Co. of New York* v. *Henderson,* 265 Mass. 322. Requests numbered 39 and 41[1] were rightly denied. Requests numbered 36 and 37, which were to the effect that the plaintiff was bound by the allegations in its declaration that the principal on the two bonds was the partnership, were abstractly correct. *Bancroft* v. *Cook,* 264 Mass. 343, 348. *Markus* v. *Boston Edison Co.* 317 Mass. 1, 7. These requested rulings, however, were not material to the decisive issue, and the defendant suffered no harm in their denial. *John Hetherington & Sons, Ltd.* v. *William Firth Co.* 210 Mass. 8, 18.

3. The thirty-fourth request was: "Notice of acceptance of the contract of indemnity by the plaintiff was never communicated to the defendant David Bloom and he therefore cannot be held liable thereunder."

The general contract of indemnity, which was filled in on a printed form of the plaintiff, designated Leighton & La Pierre Co., Louis Bloom, Henry B. Bloom, and David Bloom as indemnitors, and was signed by them under seal. The plaintiff, which was designated as surety, did not sign, and the form furnished no place for anyone to sign on its behalf. The contract provided, "Whereas, certain bonds,

---

[1] "39. If there was no partnership between Henry B. Bloom, Sylvia W. Bloom and Muriel Cohen, there was no principal in either of the two bonds in question, and the defendant David Bloom is not liable under either bond." "41. The defendant David Bloom is not liable on either of the two bonds because there was no principal on either bond." The judge gave the thirty-eighth request, which was: "If Sylvia W. Bloom was the wife of Henry B. Bloom there could be no partnership between them."

undertakings and other writings obligatory in the nature of
a bond, have heretofore been, and may hereafter be, re-
quired by, for, or on behalf of the indemnitor(s), or any one
or more of the parties included in the designation indemni-
tor(s), in connection with either their joint, several or indi-
vidual business, and application has been made and may
hereafter be made to the surety to execute such instruments
as surety.   Now therefore, in consideration of the premises
and of the sum of One Dollar, duly paid by the surety to
each of the indemnitors, the receipt whereof is hereby ac-
knowledged, and in further consideration of the execution
by the surety of obligations of the nature aforesaid to be
given by, for, or on behalf of the indemnitor(s), or any one
or more of the parties included in such designation and for
other good and valuable considerations, the undersigned
indemnitor(s)" agree to indemnify the surety by reason of
becoming surety on any bonds, and to pay an annual
premium on each bond.   "Any of the indemnitor(s) may
by written notice to the home office of the surety at Hart-
ford, Connecticut, terminate their liability as to bonds,
undertakings and other obligations in the nature of a bond
executed by the surety subsequent to ten days after the re-
ceipt of such notice by the surety.   It being understood and
agreed that such notice of termination shall in no way mod-
ify, bar or discharge any obligations of the indemnitor(s) to
be performed under this agreement in connection with bonds
executed by the surety prior to the effective date of the said
notice of termination. . . . We acknowledge that the exe-
cution, from time to time, of bonds or undertakings under
this general contract of indemnity is the compensation for
this general contract of indemnity . . . . We further agree
that our liability shall be construed as the liability of a com-
pensated surety, as broadly as the liability of the surety is
construed towards its obligee. . . . The undersigned indem-
nitor(s) fully appreciate that this agreement is intended
to cover whatever bonds . . . may be executed by the
surety on behalf of the undersigned indemnitors, or any one
of them, from time to time, and over an indefinite period of

years, until this agreement shall be cancelled in accordance with the terms hereof."

The defendant's contention is that the general contract of indemnity was unilateral in character, and amounted to no more than a promise to guarantee or indemnify, which the plaintiff might or might not accept; and that the plaintiff should have given notice of acceptance to the defendant within a reasonable time. This theory overlooks the fundamental distinction between an absolute guaranty and an offer of one. See *Paige* v. *Parker*, 8 Gray, 211, 213–214. The general contract of indemnity under seal executed by the defendant was at once binding on him. *Chem-Lac Products, Inc.* v. *Gerome*, 327 Mass. 394, 395. It contained other recitals of consideration to the defendant. See *Davis* v. *Wells*, 104 U. S. 159, 167–168. Still other provisions as to termination are inconsistent with the implication of any duty upon the plaintiff to give notice of the execution of any bond. Where there is an absolute guaranty, no obligation exists to give notice of the doing of any specified act. *Mayo* v. *Bloomberg*, 290 Mass. 168, 170–171, and cases cited. See *Gloucester Mutual Fishing Ins. Co.* v. *Boyer*, 294 Mass. 35, 41. The cases relied upon by the defendant concern contingent offers of guaranty. See *Cumberland Glass Manuf. Co.* v. *Wheaton*, 208 Mass. 425, 431–432. The distinction from an absolute guaranty is clearly pointed out in *Black, Starr & Frost* v. *Grabow*, 216 Mass. 516, 518, and *Lane Brothers Co.* v. *Sheinwald*, 275 Mass. 96, 98.

On the issue of notice, the judge found that the defendant "accepted the benefits of the contract and was aware of its acceptance by the surety prior to the losses sustained by it." As the finding was immaterial, there is no occasion to consider the defendant's complaint that it was unwarranted by the evidence.

*Exceptions overruled.*