Roach, Christine M., J.
This is a dispute over a commercial tenancy. Plaintiff landlord first filed a one-page summaiy process Complaint on March 26, 2008, seeking $157,617 in rent and late fees. Tenant Defendants[1] thereafter filed, on March 31, 2008, a one-page Motion to Dismiss on the ground that the tenant had vacated the premises prior to the summaiy process filing. The parties were heard preliminarily by the court on March 31, 2008. They then requested permission for supplemental briefing, which was granted. The motions which came out of that briefing were heard on April 17, 2008 and taken under advisement.
Pending are: Defendants’ Motion to Dismiss the summary process action (with an Affidavit in Support); Plaintiffs Complaint for Summaiy Process; and Plaintiffs Motion for Summary Judgment (with an Appendix of materials in support). For the reasons set forth herein, the Motion to Dismiss is DENIED, and the Motion for Summaiy Judgment is GRANTED in part and DENIED in part.
Undisputed Background Facts
The parties entered into a commercial lease for the premises at 272 High Street, Clinton, Massachusetts November 1, 1999. The individual Defendants were doing business in the corporate name, running a billiard parlor, bar, and dance hall. The lease period was for five years, with an option to extend for an additional five years. The parties exercised the option in November 2004.
The lease provided tenant Defendants would bear the cost of any modifications to the sprinkler system “required due to activities or changes made by the lessee.” Lease at pages 4-5. The lease also provided Plaintiff landlord was responsible for installing a burglar and fire alarm system in the building: “The premises will be equipped by the Lessor at Lessor’s expense, with a burglar/fire alarm system, monitored by a 24 hour central station.” Lease at page 8.
On May 17, 2006, the Clinton Fire Chief notified both parties that the billiard hall lacked an approved fire sprinkler and alarm system that complied with the new state law effective November 15, 2004.[2] Plans for same had been due on May 15, 2006, and the Fire Chief stated installation was required prior to November 15,2007 to avoid further legal action. The landlord engaged a fire inspector, who provided a list of issues for correction in the building. By letter dated November 28, 2007, the Fire Chief informed the landlord that the building remained out of compliance. The Fire Chief “realiz(ing) that Break-away Billards (sic) have moved out” informed the landlord that the location could not be used as an entertainment venue until the building was brought into compliance. Exhibit 5 to Plaintiffs (renewed) Complaint for Summaiy Process.
Facts with Respect to Possession
Defendants do not claim to have given the landlord written notice that they were vacating the tenancy. Nor does the record reflect a written notice to quit by the landlord.
By Affidavit dated April 11, 2008,[3] Defendant James Souza states that between March 2005 and approximately April 2007, he had ongoing conversations with Plaintiff Aronovitz “about his complying with the law.” Defendant further states Plaintiff “finally informed me that he would not install nor pay for the installation of the required sprinkler system.” Defendant does not date this statement by Plaintiff, in contrast to the remainder of his Affidavit. The court credits it as reliable, however, because it is consistent with all of the circumstantial evidence, and it is not disputed by a sworn statement from Plaintiff.
Defendant Souza goes on to testify that he gave Plaintiff Aronovitz oral notice at a meeting on April 24, 2007, that the tenants would start to look for new space; and in May 2007 informed him they had found new space, and that they would be moving in September 2007. Mr. Souza states that by September 20, 2007 the tenants had moved completely out of 272 High Street to their new location in Clinton at 104 Sterling Street. He further testifies that the parties met at the new location on October 1, 2007, at which time Mr. Souza informed Mr. Aronovitz that the tenants had moved out and had no further use for the premises at 272 High Street.[4]
Thus there can be no genuine dispute that the tenant has surrendered possession, whether by abandoning the lease, or lawfully terminating it for landlord’s failure to perform a promise contained therein which deprived tenant of a significant inducement to enter (or continue) the lease. Wesson v. Leone Enterprises, Inc., 437 Mass. 708, 720-21 (2002) (adopting Restatement (Second) of Property (Landlord and Tenant) Section 7.1 (1977)). The undisputed fact is that Break-Away Billiards, Inc. left the premises in or about September 2007, and the landlord has been free to do as he chooses with the leasehold since that time.
Aronovitz submits in support of his summaiy judgment motion numerous (unauthenticated) photographs purporting to show either tenant property remaining behind, or tenant damage to the premises. However, in his proffered accounting at Exhibit 2 to Plaintiffs Complaint for Summaiy Process, Aronovitz *206 has yet to claim or quantify the damage costs to him associated with the tenant’s departure,[5] and thus the court makes no ruling on that issue at this time. As discussed further below, damages cannot be resolved on this record and will require further proceedings. That said, pursuant to the lease and the events that have transpired, Plaintiff is entitled to possession as a matter of law. Mass.G.L. Chapter 239, section 3.
Constructive Eviction
The tenant has not filed pleadings in opposition to summary judgment. Defendants simply moved to dismiss the summary process complaint on the grounds that: 1) they already moved out; and 2) they did so as a result of the landlord’s failure to comply with the law regarding a sprinkler and alarm system at the premises. Defendants supported their motion with the Affidavit of Mr. Souza referenced above. To the extent Defendants are making an argument for constructive eviction as a defense to the claim for rent, the court finds in their favor.
It is the tenant’s burden to prove it was constructively evicted. Wesson, 437 Mass. at 713. A constructive eviction is any “act of permanent character, done by the landlord, or by his procurement, with the intention and effect of depriving the tenant of the enj oyment of the premises demised or of a part thereof, to which he yields and abandons possession, . . . within a reasonable time.” Id., citations omitted. Not every act or omission by a landlord causing tenant disruption rises to the level of constructive eviction. Conduct that does “ ‘not make the premises untenantable for the purposes for which they were used’ will not constitute constructive eviction.” Id., 437 Mass. at 714, citations omitted. A landlord’s failure to provide a service that is essential to the use and enjoyment of the demised premises may qualify. Here the failure was not merely inconvenient or expensive for the tenant. Compliance with “an adequate system of automatic sprinklers” was required for Break-Away to operate its business going forward.
The lease in this case, first signed in 1999 but reaffirmed by option in November 2004 — ironically the same month the applicable legislation became effective — placed the responsibility for sprinkler modification squarely on the tenants and the requirements of their business. On the other hand, it placed responsibility for the fire alarm system on the landlord. The parties have jointly failed directly to address the reality that Section 26G 1/2 combines these two responsibilities referenced by the lease into one: “For purposes of this section the term ‘adequate system of automatic sprinklers’ shall include: (1) a working automatic sprinkler system; (2) fire alarm system control equipment which provides notice of an emergency within a place of assembly; and (3) adequate monitoring of and reporting of any activation of the automatic sprinkler system and fire alarm equipment, in accordance with the state building code in effect at the time of the installation of such system and equipment.” And the new statute explicitly assigns the cost of installing an adequate system “to be borne in its entirety by the owner of the building or structure," in this case the Plaintiff.[6]
It is uncontroverted on this record that the responsible government authority in Clinton, the Fire Chief, determined by November 2007 that the building at 272 High Street was not in compliance with the law, which resulted (after tenant’s departure) in the Fire Department’s declaring that “the location can no longer be used as such a venue.” This public record is direct evidence of “untenantability” for the precise purposes for which this tenant had been using the space. The tenant was on notice that it would be unable to conduct its business as of November 2007. When combined with Plaintiffs statement to Mr. Souza that the landlord would not pay for a new sprinkler system, these facts establish constructive eviction as a matter of law. See Wesson, 437 Mass. at 714-15, and notes 15 and 16. The court therefore finds the tenant justified in considering the lease terminated, and vacating the premises effective September 2007, and the tenant is relieved of its obligation to pay rent thereafter.
Potential Breach Defense or Counterclaim
At the hearing on April 17, 2008, the parties appeared in agreement that the lease was unambiguous and controlling, and that the court could interpret same as a matter of law. In contrast, the court finds the statute controlling. In response to the court’s repeated queries, the parties denied that a Wesson issue of mutually dependent covenants has been raised in this case. Indeed, Defendants have not filed a separate action for declaratory judgment or breach of contract in which to raise those issues. Farfard, 430 Mass. at 517 (“The proper procedures for a defendant in such a situation is to file a separate claim and move to consolidate the actions"). Because Plaintiff is entitled to a judgment for possession, and because the tenants cannot state a counterclaim in this action, there is no basis before the court for direct relief to Defendants.
Plaintiffs Damages
According to the unchallenged (albeit unauthenticated) accounting attached to Plaintiffs (renewed) Complaint for Summary Process at Exhibit 2, the tenant has not paid rent since July 2007. And, as noted above, Defendants exercised a five-year option in November 2004. Thus, absent proof that landlord breached first, Defendants would potentially have been liable for rent in the minimum amount, as of date of the summary process filing, of $157,608, subject to proof by Defendants of lack of sufficient mitigation by the landlord. Lease at page 10; Burnham v. Mark IV Homes, Inc., 387 Mass. 575, 586 (1982); Coz v. Coz Plastics, Inc., 11 Mass. L. Rptr. 310, 2000 WL 424481 (Mass.Super.) (“Plaintiff is free (and in fact may be *207 obligated to attempt) to lease the premises to another tenant, presumably at terms at least as favorable as those bargained for by the instant parties”).
Based on the court’s rulings herein, however, Defendants are relieved of their rental obligations as of September 30, 2007. Plaintiff is entitled to be paid rent through that period, pursuant to all applicable clauses of the lease, including late payment fees. As discussed above, Plaintiff may also be entitled to costs from the Defendants for the manner in which the tenant vacated. The court cannot accurately discern these amounts from the record before it.
Accordingly the parties shall have a maximum of 45 days from the date of this Order to join issue on the damages question. Plaintiff shall submit pleadings in the form of an assessment of damages on the summary process claim, with appropriately authenticated evi-dentiary support, and serve same upon Defendants pursuant to the Rule 9A procedure. Should the parties believe an evidentiary hearing with or without live witnesses is required, they shall so inform the court in their pleadings. Otherwise, an assessment of damages order shall issue as is supported by the eviden-tiary submissions.
Conclusion
Defendants’ Motion to Dismiss the Summary Process Complaint is DENIED. Plaintiffs Summary Process Complaint for possession is GRANTED, but with respect to the Account Annexed, DENIED. Plaintiffs Motion for Summary Judgment is GRANTED, in part, with respect to possession only, and DENIED with respect to future rent. The question of Plaintiffs damages under the lease must await an appropriately documented motion for assessment.

 The individual Defendants personally guaranteed the lease.

 Mass. G.L. Chapter 148, section 26G1/2, titled “Nightclubs, dance halls, discotheques, bars; adequate system of automatic sprinklers.”

 The Defendant’s Affidavit, which is drafted in un-enumerated paragraphs, contains sporadic hearsay. Likewise certain of the materials submitted by Plaintiff are unauthenticated or hearsay. The court explicitly disregards, and does not consider for purposes of these motions, any such inadmissible material. Admissions by Plaintiff, however, are by definition not hearsay and are admissible. Proposed Mass.R.Evid. 801(d)(2).

 Plaintiff moved on April' 14, 2008 to strike the Souza. Affidavit of April 11, 2008 on two grounds. First, Plaintiff rightly notes he cannot cross-examine an Affidavit. However, Plaintiff has now himself filed for summary judgment, and purported to proffer in support of that motion numerous (often unauthenticated) factual materials. This is a non-jury case. To the extent the parties have asked the court to resolve facts not genuinely in dispute and to rule on matters of law, the court deems this first ground of objection moot. Second, Plaintiff notes that as a matter of law Defendants cannot bring counterclaims in this summary process action. Fafard v. Lincoln Pharmacy of Milford, 329 Mass. 512, 517 (2003). As discussed below, the court does not accept the Affidavit as stating a counterclaim, but merely as an effort to address the issue of possession, and finds portions of the Affidavit admissible for that limited purpose.

 The lease provides “said premises to be yielded up in good repair, order and condition in all respects, damage by fire, normal reasonable wear and tear or other unavoidable casualty excepted.” Lease at page 7.

 The court reads the second paragraph of the statutory provision to apply to the building at 272 High Street, and thus rejects an interpretation that would place installation responsibilities on the individual Defendants in this case as business owners, pursuant to the third paragraph of the statute. By either reading, however, Plaintiff would remain responsible for the cost of installation.